# IN THE SUPREME COURT OF CALIFORNIA

ZB, N.A., and ZIONS BANCORPORATION,
Petitioners,

v.

SUPERIOR COURT OF SAN DIEGO COUNTY,
Respondent;

KALETHIA LAWSON,
Real Party in Interest.

S246711

Fourth Appellate District, Division One
D071279 and D071376

San Diego County Superior Court
37-2016-00005578-CU-OE-CTL

September 12, 2019

Justice Cuéllar authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu, Kruger, and Groban concurred.

ZB, N.A. v. SUPERIOR COURT

S246711


Opinion of the Court by Cuéllar, J.


Under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.),[1] an employee may seek civil penalties for Labor Code violations committed against her and other aggrieved employees by bringing — on behalf of the state — a representative action against her employer.  (§ 2699, subd. (a).)  In *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), we held that a court may not enforce an employee's alleged predispute waiver of the right to bring a PAGA claim in any forum.  We also found that where such a waiver appears in an employee's arbitration agreement, the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) does not preempt this state law rule.

This case concerns a PAGA action seeking civil penalties under Labor Code section 558.  Brought by real party in interest Kalethia Lawson, the action named as defendants Lawson's employer, ZB, N.A. — with whom she agreed to arbitrate all employment claims and forego class arbitration — and its parent company, Zions Bancorporation (collectively, ZB).  Before the enactment of the PAGA, section 558 gave the Labor Commissioner authority to issue overtime violation citations for "a civil penalty as follows: [¶] (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period

---

**1**     All subsequent statutory references are to the Labor Code, unless otherwise noted.

for which the employee was underpaid *in addition to an amount sufficient to recover underpaid wages.* [¶] (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid *in addition to an amount sufficient to recover underpaid wages.*" (*Id.*, subd. (a), italics added.) We granted review to decide whether *Iskanian* controls, and the FAA has no preemptive force, where an aggrieved employee seeks the "amount sufficient to recover underpaid wages" in a PAGA action.

But to resolve this case we must answer a more fundamental question: whether a plaintiff may seek that amount in a PAGA action at all. The Court of Appeal thought so. It concluded section 558's civil penalty encompassed the amount for unpaid wages, and Lawson's claim for unpaid wages could not be compelled to arbitration under *Iskanian*. It accordingly ordered the trial court below to deny ZB's motion to arbitrate that portion of her claim.

What we conclude is that the civil penalties a plaintiff may seek under section 558 through the PAGA do not include the "amount sufficient to recover underpaid wages." Although section 558 authorizes the Labor Commissioner to recover such an amount, this amount — understood in context — is not a civil penalty that a private citizen has authority to collect through the PAGA. ZB's motion concerned solely that impermissible request for relief. Because the amount for unpaid wages is not recoverable under the PAGA, and section 558 does not otherwise permit a private right of action, the trial court should have denied the motion. We affirm the Court of Appeal's decision on that ground. On remand, the trial court may

2

consider striking the unpaid wages allegations from Lawson's complaint, permitting her to amend the complaint, and other measures.

## I.

According to her complaint, Lawson began working for California Bank & Trust (CB&T) in 2013 as an hourly employee. CB&T is now a division of petitioner ZB, N.A. ZB's motion to compel arbitration explained that the employee handbook in effect at the time of Lawson's hiring included a section entitled "Mandatory Binding Arbitration Policy and Agreement." A "statement of compliance" distributed with the employee handbook required the employee, by signing, to affirm that she had read that section of the handbook. The statement read: "I understand that by accepting or continuing employment with the Company I agree to use binding arbitration to resolve certain legal claims or controversies with the Company, Zions or Zions Entities, including federal Title VII and state civil rights claims, pursuant to the mandatory binding arbitration policy."

Lawson electronically acknowledged receipt of the employee handbook and statement of compliance, as well as an updated employee handbook and statement of compliance a year later. Lawson does not contest here that she is bound to arbitration pursuant to the terms of the relevant employee handbook section. The section mandated binding arbitration to resolve "[a]ny legal controversy or claim arising out of [Lawson's] employment." It also contained a "class action" waiver that said: "[C]laims by different claimants against the Company, Zions and Zions Entities or by the Company against different employees, former employees or applicants, may not be combined in a single arbitration. Unless specific state law states

otherwise, no arbitration can be brought as a class action (in which a claimant seeks to represent the legal interests of or obtain relief for a larger group) . . . ."

In February 2016, Lawson sued ZB, N.A., named as CB&T in the complaint, and its parent company, petitioner Zions Bancorporation, for alleged Labor Code violations harming her and other employees. Lawson's complaint contains a single cause of action brought under the PAGA. She alleges ZB failed to provide overtime and minimum wages, meal and rest periods, timely wage payments, complete and accurate wage statements, complete and accurate payroll records, and reimbursement of business-related expenses. As relevant here, Lawson's complaint seeks "civil penalties against [ZB], including unpaid wages and premium wages per California Labor Code section 558."[2] (See §§ 558, 2699, subd. (a).)

In August 2016, ZB moved the trial court to compel Lawson to individually arbitrate "her claim for victim-specific relief under Labor Code § 558" and stay the civil action. ZB maintained that Lawson's employment agreement required her

---

[2] Section 558, subdivision (a) provides: "Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: [¶] (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. [¶] (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. [¶] (3) Wages recovered pursuant to this section shall be paid to the affected employee."

to arbitrate all employment claims on an individual basis. While recognizing the unenforceability of that agreement with respect to "traditional PAGA penalties" under *Iskanian*, ZB contended the "unpaid wages" Lawson sought, which section 558, subdivision (a)(3) requires be paid to "the affected employee[s]," were something different: "victim-specific relief" that ZB could require Lawson to arbitrate individually under the FAA and *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333. In effect, ZB's contention was that the "victim-specific relief" that Lawson sought under section 558 was not part of "a standard PAGA action" but remained a "claim . . . subject to individual arbitration," although the civil penalties available under section 558 were not arbitrable. The trial court generally agreed, bifurcating Lawson's action and granting ZB's motion to compel arbitration of the "unpaid wages" issue.

But ZB got more than it bargained for in the process. In the trial court's view, the "unpaid wages" relief sought in Lawson's PAGA claim nevertheless required "representative" adjudication since the "PAGA, by its very nature, is a representative statute." It therefore ordered the issue to arbitration "as a representative action" for the unpaid wages of *all* aggrieved ZB employees. ZB responded by filing both an appeal and petition for writ of mandate with the Court of Appeal. After consolidating the two, the appellate court dismissed the appeal, holding that Code of Civil Procedure section 1294 only gave it appellate jurisdiction over an order dismissing, not granting, a motion to compel arbitration. ZB does not request our review of that matter.

On the other hand, ZB persuaded the Court of Appeal to issue the writ of mandate, but the court did so on a different

ground from the one ZB asserted. The appellate court concluded that Lawson's request for unpaid wages under section 558 in fact could not be arbitrated at all. Relying on *Thurman v. Bayshore Transit Management* (2012) 203 Cal.App.4th 1112 (*Thurman*), the Court of Appeal interpreted section 558 to expressly include "underpaid wages" within the scope of its "civil penalty" provision. In the appellate court's view, an employee could pursue the entire, indivisible civil penalty through the PAGA, and under *Iskanian*, her employer could not compel that representative PAGA claim to arbitration. Our opinion in *Iskanian*, it surmised, "made it clear that the distinction between civil penalties and victim specific statutory damages hinges in large measure on whether, prior to enactment of the PAGA, they could only be recovered by way of regulatory enforcement or whether they supported a private right of action." (*Lawson v. ZB, N.A.* (2017) 18 Cal.App.5th 705, 724.) Disagreeing with *Esparza v. KS Industries, L.P.* (2017) 13 Cal.App.5th 1228 (*Esparza*), the Court of Appeal concluded section 558 previously lacked a private right of action. So, a PAGA claim for the unpaid wages included in section 558's civil penalty came within *Iskanian*'s prohibition on predispute waivers of such claims. The court then issued a writ of mandate commanding the trial court to vacate its previous order and enter a new order denying ZB's motion to arbitrate.

We granted ZB's petition for review to resolve the split of authority over whether an employer may compel arbitration of an employee's PAGA claim requesting unpaid wages under section 558.

## II.

When it ordered the trial court to deny arbitration, the Court of Appeal started from *Thurman*'s conclusion that section 558's amount for unpaid wages is a civil penalty that employees like Lawson can recover under the PAGA. To determine if this interpretation is correct, we begin with a nuanced examination of the PAGA, Labor Code civil penalties, and section 558.

The Legislature enacted the PAGA in 2003 after deciding that lagging labor law enforcement resources made additional private enforcement necessary " 'to achieve maximum compliance with state labor laws.' " (*Iskanian*, *supra*, 59 Cal.4th at p. 379, quoting *Arias v. Superior Court* (2009) 46 Cal.4th 969, 980 (*Arias*).) The PAGA therefore empowers employees to sue on behalf of themselves and other aggrieved employees to recover civil penalties previously recoverable only by the Labor Commissioner — including those in section 558. (See § 2699, subd. (a); *Iskanian*, at p. 381.) The PAGA also creates new civil penalties, equally enforceable by aggrieved employees, for most other Labor Code violations that previously did not carry such penalties. (§ 2699, subds. (f), (g)(1); *Iskanian*, at pp. 379-380.)

All PAGA claims are "representative" actions in the sense that they are brought on the state's behalf. The employee acts as "the proxy or agent of the state's labor law enforcement agencies" and "represents the same legal right and interest as" those agencies — "namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency." (*Iskanian*, *supra*, 59 Cal.4th at p. 380, quoting *Arias*, *supra*, 46 Cal.4th at p. 986.) The employee may therefore seek any civil penalties the state can, including penalties for violations involving employees other

than the PAGA litigant herself. In *Iskanian*, we declared unenforceable as a matter of state law an employee's predispute agreement waiving the right to bring these representative PAGA claims. Requiring employees to forgo PAGA claims in this way contravenes public policy by "serv[ing] to disable," through private agreement, one of the state's "primary mechanisms" for enforcing the Labor Code. (*Iskanian*, at p. 383.) We then concluded the FAA did not preempt this rule or otherwise require enforcement of such a waiver in an arbitration agreement. (See *id.* at pp. 384-389.)

But not all statutory remedies for Labor Code violations are "civil penalties" recoverable in an employee's PAGA action. Civil penalties were " 'previously enforceable only by the state's labor law enforcement agencies' " before the PAGA. (*Iskanian*, *supra*, 59 Cal.4th at p. 381.) That was because an action for civil penalties " 'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties.' " (*Arias*, *supra*, 46 Cal.4th at p. 986.) Other remedies, such as restitution of unpaid wages, " 'were recoverable directly by employees well before' " the PAGA.[3] (*Iskanian*, at p. 381.) In addition, civil penalties are " ' "additional to actual losses incurred . . . ." ' " (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th

---

[3] Employees could also directly recover *statutory* penalties, as distinct from civil penalties, before the PAGA. (*Iskanian*, *supra*, 59 Cal.4th at p. 381.) For example, under section 203, an employer who willfully fails to pay wages owed to a discharged employee must pay the employee a penalty equal to her daily wages for up to 30 days. (*Iskanian*, at p. 381; § 203, subd. (a).) Because neither party argues the "underpaid wages" in section 558 are a statutory penalty, we may confine our discussion to distinguishing civil penalties from compensatory damages, such as restitution of wages.

1094, 1104 (*Murphy*).) They are intended "to punish the employer" for wrongdoing, often " 'without reference to the actual damage sustained . . . . ' " (*Ibid.*) Statutory damages, on the other hand, primarily seek to compensate employees for actual losses incurred, though like penalties they might also "seek to shape employer conduct" as a secondary objective. (*Id.* at p. 1112.)

Consider, for example, the remedies available when an employer willfully pays a discharged employee less than the minimum wage in her final paycheck. The employer violates — among other provisions — section 1182.12 for failing to pay her the minimum wage, and section 201 for failing to pay her that wage promptly upon discharge. (See §§ 1182.12, 201; see also *Diaz v. Grill Concepts Services, Inc.* (2018) 23 Cal.App.5th 859, 867.) The Labor Code entitles the discharged employee to compensatory relief in the form of unpaid wages.[4] (See, e.g., § 1194.) In addition, section 1197.1 subjects the employer to a civil penalty of $100 for that pay period (or $250, if the employer has previously failed to pay her the minimum wage). (*Id.*, subd. (a).)

Now consider the enforcement mechanisms available to obtain these remedies. The employee may recover her unpaid wages directly through a private civil action. (§ 1194, subd. (a).) Alternatively, she may file a wage complaint with the Labor Commissioner, seeking administrative relief. (See § 98; *Post v.*

---

[4] The employee may also recover section 203's statutory penalty. (*Id.*, subd. (b) [permitting employee to recover the statutory penalty in a civil action]; *Iskanian, supra,* 59 Cal.4th at p. 381.) That penalty is on top of the actual wages owed prior to discharge.

*Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 946 (*Palo/Haklar*).) Should the Labor Commissioner decide to act on that complaint, the commissioner may "either accept the matter and conduct an administrative hearing" to which the employee is a party, or the commissioner may "prosecute a civil action." (*Palo/Haklar*, at p. 946; see also §§ 98, 98.3, 1193.6.) Separate from processing an employee's individual wage claim, the Labor Commissioner may also enforce Labor Code requirements by investigating and issuing a citation to the employer through the Division of Labor Standards Enforcement's (DLSE) Bureau of Field Enforcement. (See §§ 90.5, 1194.2, 1197.1.) So, the commissioner may pursue a civil action or issue a citation to recover the unpaid wages payable to the employee — just as the employee could recover the wages through her private civil action or a section 98 administrative hearing (Berman hearing). (See §§ 98, 98.3, 1193.6, 1197.1.) The PAGA neither added to nor subtracted from these procedures for securing employees' unpaid wages.

With respect to civil penalties, however, the landscape was quite different prior to enactment of the PAGA. Before the PAGA was enacted, only the Labor Commissioner could also seek civil penalties against the employer. (See § 1197.1; *Iskanian, supra*, 59 Cal.4th at p. 378.) Now, the PAGA makes civil penalties equally recoverable through a civil action brought by an aggrieved employee. (§ 2699, subds. (a), (g)(1); see, e.g., *Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 551.) Pursuing civil penalties does not prevent an employee from separately or concurrently pursuing unpaid wages and other remedies already available to her. (*Id.*, subd. (g)(1).)

So how do we map this distinction between civil penalties and statutory damages onto our understanding of the relief available under section 558? The Legislature enacted section 558 as part of the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999. (Stats. 1999, ch. 134, § 14; see, e.g., *Bearden v. U.S. Borax, Inc.* (2006) 138 Cal.App.4th 429, 434.) The act sought to restore and protect the eight-hour workday (see § 510) and overtime pay requirements. (See, e.g., Assem. Com. on Appropriations, Analysis of Assem. Bill No. 60 (1999-2000 Reg. Sess.) as amended Mar. 22, 1999, pp. 1-4; *Bearden*, at p. 434.) Through section 558, the Legislature authorized the Labor Commissioner to issue citations, including an assessment of civil penalties, for overtime and other workday violations. (See Legis. Counsel's Dig., Assem. Bill No. 60 (1999-2000 Reg. Sess.) 5 Stats. 1999, Summary Dig., p. 62.) Under section 558, subdivision (a), any employer who violates these provisions "shall be subject to *a civil penalty as follows*: [¶] (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid *in addition to an amount sufficient to recover underpaid wages*. [¶] (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid *in addition to an amount sufficient to recover underpaid wages*." (Italics added.) The next paragraph directs that "[w]ages recovered pursuant to this section shall be paid to the affected employee." (§ 558, subd. (a)(3).) For clarity, we will refer to section 558's fixed dollar amount ($50 or $100) as its "fixed amount" and the "amount sufficient to recover underpaid wages" as the "amount for unpaid wages" or "unpaid wages."

The amount of unpaid wages recovered through section 558 will vary by employee. The crux of the parties' dispute concerns whether this employee-specific amount is the kind of "civil penalty" the PAGA and *Iskanian* contemplated the employee pursuing on the state's behalf — and whose recovery *Iskanian* thus immunized from predispute waivers in arbitration agreements.

## III.

Initially, ZB argues that not all civil penalties are created equal. ZB posits that the PAGA may well permit employees to recover two distinct types of civil penalties: (1) "traditional" civil penalties like section 558's fixed amount; and (2) "nontraditional" civil penalties, like unpaid wages under section 558, that are "victim specific" and were paid directly to the employee before the PAGA. From ZB's perspective, *Iskanian* forbids predispute waivers of claims for the former; but employers may require such waivers for the latter. (See *Esparza, supra,* 13 Cal.App.5th at p. 1243 ["[a] determination that an award of unpaid wages under Labor Code section 558 is a civil penalty does not control how we interpret the term civil penalty as it is used in the *Iskanian* rule"].) Alternatively, ZB asserts that unpaid wages recovered through section 558 fail to qualify as a civil penalty of either kind and are better understood as compensatory damages. That would mean Lawson cannot seek those unpaid wages in her PAGA action since, as even Lawson concedes, the PAGA only creates a cause of action for civil penalties. (See § 2699, subd. (a).) Lawson, in contrast, urges us to read section 558's reference to unpaid wages as part of an integrated civil penalty recoverable under the PAGA. Because section 558 has no private right of action

and she can only seek its unpaid wages remedy through the PAGA, *Iskanian* provides no basis for distinguishing it from any other civil penalty " 'previously enforceable only by the state's labor law enforcement agencies.' " (*Iskanian*, *supra*, 59 Cal.4th at p. 381.) That section 558 requires this amount to be paid to the affected employee makes no difference, she says, since only the Labor Commissioner could secure such payment for employees prior to the PAGA.

We agree in part with Lawson: section 558 lacks a private right of action. An aggrieved employee can make use of section 558's remedy only when she acts as the state's proxy — and that's a role she can play only through a PAGA action. Nevertheless, a close, contextual analysis of the statutory scheme reveals that the amount for unpaid wages referenced in section 558 is not part of that section's civil penalty and is not recoverable through a PAGA action. Instead, as ZB says, this part of a section 558 citation represents compensatory damages. Section 558, in other words, authorizes *only* the Labor Commissioner to issue a citation that includes both a civil penalty *and* the same unpaid wages Lawson can alternatively recover under section 1194 through a civil action or an administrative hearing. But section 2699, subdivision (a) does not authorize employees to collect section 558's unpaid wages through a PAGA action. This reading best harmonizes section 558 with the procedural provisions in section 1197.1, with analogous remedies elsewhere in the Labor Code, and with the broader enforcement scheme for unpaid wages. It also fits with the understanding of the agency in charge of issuing these citations, and with the relevant legislative history.

## A.

We review the Court of Appeal's interpretation of sections 2699, subdivision (a) and 558 de novo. (*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1089 (*United Riggers*).) Statutory interpretation requires us "to ascertain and effectuate the intended legislative purpose." (*Ibid.*) We consider the provisions' language in its "broader statutory context" and, where possible, harmonize that language with related provisions by interpreting them in a consistent fashion. (*Ibid.*) If an ambiguity remains after this preliminary textual analysis, we may consider extrinsic sources such as legislative history and contemporaneous administrative construction. (See *id.* at p. 1093; *Murphy*, *supra*, 40 Cal.4th at p. 1103.) Because statutes governing employment conditions tend to have remedial purposes, we "liberally construe" them "to favor the protection of employees." (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 262 (*Augustus*); accord, *Murphy*, *supra*, 40 Cal.4th at p. 1103; see also *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 340.)

Lawson offers what appears to be, at first glance, a plausible reading of the statute. Subdivision (a) of section 558 uses a familiar structure: identifying a class ("civil penalty") then using a colon to introduce the members of that class; or, alternatively, identifying a term then using a colon to introduce that term's definition. Under this reading, "civil penalty" is the class of remedy, while the fixed amount and unpaid wages are members of that class: the employer "shall be subject to a civil penalty as follows: [¶] . . . fifty dollars ($50) . . . in addition to an amount sufficient to recover underpaid wages." (§ 558, subd.

(a)(1).) The lack of a comma between the fixed amount and the amount for unpaid wages tends to support this reading.

But other language in the statute gives us reason to doubt Lawson's construction. Section 558, subdivisions (a)(1) and (2) state that the "civil penalty" is *in addition to* an amount sufficient to recover underpaid wages." (Italics added.) What "in addition to" appears to indicate is that these provisions subject the employer to a civil penalty on top of, not including, an amount meant to compensate for unpaid wages. Moreover, the "[w]ages recovered" through that amount "shall be paid to the affected employee." (§ 558, subd. (a)(3).) It is not unheard of for the state to direct payment of civil penalties to private citizens — this is precisely what the PAGA authorizes by awarding aggrieved employees 25 percent of civil penalties recovered. Yet this directive could suggest the unpaid wages address *the injury to the employee*, compensating her for what she's lost, whereas civil penalties address *the conduct of the employer* and so typically redound primarily to the state. In *Murphy*, we suggested that where an ambiguous Labor Code provision can plausibly be categorized as either employee-focused or employer-focused, the former understanding better reflects the principle of interpreting such provisions broadly in favor of protecting employees. (See *Murphy*, *supra*, 40 Cal.4th at p. 1104.) Just as Lawson's reading finds support in the language of section 558, so too, then, does ZB's alternative assertion that the better reading treats those monies collected "to recover underpaid wages" as compensatory damages.

Indeed, a closely related statute deploys precisely the same construction — "in addition to an amount sufficient to recover underpaid wages" — to introduce compensatory

damages for unpaid wages, not civil penalties. Section 1197.1 sets out the procedures for issuing, contesting, and enforcing judgments for citations issued under section 558. (See §§ 558, subd. (b), 1197.1.) That section also provides its own civil penalties, analogous to section 558's, for minimum wage violations. According to section 1197.1's terms, an employer who fails to pay minimum wage "shall be subject to a civil penalty, *restitution of wages*, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203 as follows: [¶] (1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid. This amount shall be *in addition to an amount sufficient to recover underpaid wages*, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203." (§ 1197.1, subd. (a)(1), italics added.)

Section 1197.1 is remarkably similar in structure to section 558. Like section 558, section 1197.1 authorizes the Labor Commissioner to issue a citation that includes a fixed component and an underpaid wages component (and also adds liquidated damages and statutory penalty components). Section 1197.1 follows section 558 in providing for a graduated civil penalty system for initial and subsequent violations.[5] As in

---

[5] "For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed. This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable

section 558, section 1197.1 requires that amounts beyond its fixed component "be paid to the affected employee." (*Id.*, subd. (a)(3).) And citations under sections 558 and 1197.1 share the same procedures for issuance, contest, and enforcement. (See § 558, subd. (b); compare *ibid.* with § 1197.1, subd. (b).)

Unlike section 558, section 1197.1's punctuation and parallelism make clear that the underpaid wages component of its citation functions as relief *in addition to* civil penalties. Yet the provisions' overall similarities in structure and language tend to support a conclusion that the Legislature's broad purpose was essentially the same in section 558. (See *Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 161 (*Winn*) ["We generally presume that when the Legislature uses a word or phrase 'in a particular sense in one part of a statute,' the word or phrase should be understood to carry the same meaning when it arises elsewhere in that statutory scheme"].)

Admittedly, in some respects the analysis of section 1197.1 could conceivably cut the other way. Although distinguishing the unpaid wages section 558 references from its civil penalty is consistent with the statute's language, why would the Legislature communicate somewhat more obliquely in that statute a delineation made clear in section 1197.1? But Lawson gives us no reason to consider overtime violations "unique" relative to minimum wage violations, so we have no basis to conclude that the Legislature treated unpaid wages as a civil penalty in one context but not the other. (See *United Riggers*, *supra*, 4 Cal.5th at p. 1091.) In these circumstances, we think certain quirks reflected in the statutes' distinct legislative

---

penalties imposed pursuant to Section 203." (§ 1197.1, subd. (a)(2).)

histories, rather than any difference in underlying purpose, explains the discrepancy. When the Legislature added section 558 to the Labor Code in 1999, it included both the fixed amount and the amount for unpaid wages. Meanwhile, section 1197.1 as originally enacted, before it was amended in 2011, included only a fixed component in its citation.[6] A legislature incrementally accomplishing what it has previously instituted all at once might well express the same concept with more clarity. (See *United Riggers, supra*, 4 Cal.5th at p. 1093 ["Different bills, drafted by different authors, passed at different times, might well use different language to convey the same basic rule, so the absence of an express limit in section 8814 need not imply a departure in meaning from other like statutes"].) And, of course, the Legislature amended section 1197.1 to add unpaid wages and distinguish them from civil penalties years after the PAGA's passage, when the importance of differentiating between the two was evident. In contrast, section 558's enacting Legislature likely did not foresee the

---

[6] Prior to amendment in 2011, former section 1197.1, subdivision (a), read: "Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an order of the commission shall be subject to a civil penalty as follows: [¶] (1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid. [¶] (2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed." (Stats. 2003, ch. 329, § 8, p. 2677.)

ramifications of failing to emphasize the dual nature of section 558's remedy.

Another reason cuts even more decisively in favor of treating the amount for unpaid wages as something other than civil penalties: its relationship with section 1197.1's procedural provisions. We must harmonize related statutes with each other "so that all parts of the statutory scheme are given effect." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1090-1091; accord, *Winn, supra,* 63 Cal.4th at p. 161.) Section 1197.1, subdivision (c)(3) establishes a bond requirement for employers petitioning for a writ of mandate to contest citations governed by section 1197.1's procedures. Legislators approved this bond requirement in 2016 (Stats. 2016, ch. 622, § 1) to ensure that unscrupulous employers cannot avoid paying withheld wages by filing frivolous petitions. (See Assem. Com. on Labor and Employment et al., Assem. Floor Analysis, 3d reading analysis of Assem. Bill No. 2899 (2015-2016 Reg. Sess.) as amended May 4, 2016, pp. 1-2.) To have a petition heard, the employer must post a bond with the Labor Commissioner "equal to the total amount of any minimum wages, liquidated damages, and *overtime compensation* that are *due and owing as determined pursuant to subdivision (b) of Section 558.*"[7] (§ 1197.1, subd. (c)(3), italics added.) In turn, subdivision (b) of section 558

---

[7] The use of the plural verb "are" in the relative defining clause creates some ambiguity as to whether the adjectival phrase "due and owing . . ." modifies only "overtime compensation" or also "minimum wages" and "liquidated damages." (§ 1197.1, subd. (c)(3).) But whether we use the series-qualifier principle or last antecedent rule (see, e.g., *White v. County of Sacramento* (1982) 31 Cal.3d 676, 680-681), "due and owing . . ." at least refers to overtime compensation.

explains that the commissioner may issue a citation when she or he "determines that a person had paid or caused to be paid a *wage for overtime work* in violation" of the law. (Italics added.) The Legislature frequently uses "compensation" and "wage" as synonyms for one another. (*Murphy, supra,* 40 Cal.4th at p. 1104, fn. 6.)

Reading the two statutes together supports a straightforward conclusion: the citations issued under section 558 include some amount intended to *compensate* for a withheld "wage for overtime work" — relief of the same class as "minimum wages" and "liquidated damages" in section 1197.1, subdivision (c)(3). And because we presume the Legislature used the terms "wage" and "wages" consistently throughout section 558, we may further conclude that the "amount sufficient to recover underpaid wages" in subdivision (a) is the same *compensatory* component of the citation that subdivision (b) references. Moreover, section 1197.1, subdivision (c)(3) instructs that the bond amount — which includes "overtime compensation . . . due and owing as determined pursuant to subdivision (b) of Section 558" — "shall *not* include amounts for *penalties*." (Italics added.) What follows from this language is that "overtime compensation," meaning the unpaid wages assessed under section 558, does not "include [an] amount[] for penalties." (§ 1197.1, subd. (c)(3).) Nonetheless deeming the unpaid wages in section 558 a civil penalty would render subdivision (c)(3) of section 1197.1 internally inconsistent.

Construing the unpaid wages as compensatory relief that an employee may not recover in a PAGA claim also avoids another potential inconsistency between the PAGA and section 558. The PAGA requires 25 percent of civil penalties recovered

20

to go to aggrieved employees (§ 2699, subd. (i)), whereas section 558, subdivision (a)(3) requires 100 percent of any recovered wages to be paid to the affected employee. Several courts of appeal have come to different conclusions about which provision controls the allocation of unpaid wages under section 558 when recovered as civil penalties in a PAGA claim. (Compare *Zakaryan v. The Men's Wearhouse, Inc.* (2019) 33 Cal.App.5th 659, 673-674, review granted July 10, 2019, with *Thurman*, *supra*, 203 Cal.App.4th at p. 1145.) If it were in the ambit of the Legislature's purpose for PAGA plaintiffs to recover unpaid wages as civil penalties, it presumably would have addressed this apparent conflict directly. But our holding today makes clear the conflict is illusory, because unpaid wages are not recoverable as civil penalties under the PAGA in the first place.

One final aspect of the Labor Code's remedial scheme also cuts against treating unpaid wages in section 558 as a civil penalty. The "vast majority" of civil penalties in the Labor Code are "fixed, arbitrary amount[s]." (*Murphy*, *supra*, 40 Cal.4th at p. 1107; see, e.g., §§ 225.5, subd. (a), 226.3, 226.8, subd. (b), 1174.5, 1197.1, subd. (a).) The PAGA itself creates a similar default civil penalty scheme: $100 for each aggrieved employee per pay period for an initial violation and $200 for each aggrieved employee per pay period for subsequent violations. (§ 2699, subd. (f).) This suggests the Legislature understood civil penalties to consist primarily of dollar-denominated fines. In some cases, the Legislature does calculate a "civil penalty" based partially on an employee's unpaid wages. (E.g., §§ 210, subd. (a)(2) ["two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld"], 225.5, subd. (b) [same], 230.8, subd. (d) ["a civil

penalty in an amount equal to three times the amount of the employee's lost wages and work benefits"].) What makes it difficult to equate section 558 with those provisions is that none of them describe a fixed amount "in addition to an amount sufficient to recover underpaid wages" as sections 558 and 1197.1 do. Lawson makes no argument for analogizing section 558's amount for unpaid wages to the relief in these statutes rather than the "restitution of wages" in section 1197.1. Section 1197.1 has a closer relationship and parallel scheme, and shares with section 558 a language construction appearing nowhere else in the Labor Code.

Accordingly, what we conclude is that section 558 authorizes the Labor Commissioner to issue citations for a fixed civil penalty amount "in addition to" a compensatory amount "sufficient to recover underpaid wages." Treating the amount for unpaid wages in this way best harmonizes section 558's provisions with each other and with the broader statutory scheme.

To the extent the statutory text is ambiguous, legislative history likewise supports this interpretation. As we have explained, the purpose of the PAGA was to authorize aggrieved employees to seek civil penalties, which are distinctly an interest of the state and were previously unrecoverable by private parties. (*Iskanian, supra,* 59 Cal.4th at p. 381.) Although the Legislature created section 558 five years before the PAGA, it is notable that the enacting Legislature characterized only the fixed amount as the new civil penalty it was creating for the Labor Commissioner's sole enforcement. Legislative analyses of Assembly Bill No. 60 (1999-2000 Reg. Sess.) consistently described the new section 558's "civil

penalties" as "$50 per employee for each pay period for a first violation of the overtime pay requirements of the bill, and $100 per employee for each pay period for subsequent violations." (Assem. Com. on Appropriations, Analysis of Assem. Bill No. 60 (1999-2000 Reg. Sess.) as amended Mar. 22, 1999, pp. 3-4; Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 60 (1999-2000 Reg. Sess.) as amended Mar. 15, 1999, p. 4; Assem. Com. on Labor and Employment, Republican Analysis of Assem. Bill No. 60 (1999-2000 Reg. Sess.) as amended Mar. 15, 1999, p. 15.) Analysis of a bill later amending section 558 did the same — years after the significance of designating or failing to designate something as a civil penalty would have been apparent because of the PAGA. (Sen. Rules Com., Off. Of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 970 (2015-2016 Reg. Sess.) as amended Aug. 24, 2015, p. 2 [describing existing law].)

A contemporaneous internal DLSE memorandum on the new law further supports our interpretation. The Labor Commissioner's memorandum characterized the unpaid wages as the same compensatory relief already available to employees through other means. A premise of its analysis was that section 558 established "a civil penalty citation system" as a "new method for enforcing overtime obligations." (Chief Counsel Miles E. Locker and Labor Commissioner Marcy V. Saunders, mem. to DLSE Professional Staff, Dec. 23, 1999.) A "citation" could include: "1) a civil penalty that is payable to the State (set for an initial violation, which we interpret as a first citation, at $50 per employee per pay period for which the employee was underpaid; and for a subsequent violation, at $100 per employee per pay period in which the employee was underpaid), *and* 2) an

additional amount representing the unpaid overtime wages owed to the employees, with any such wages that are recovered to be paid by DLSE to the affected employees." (*Ibid.*, original italics.) The commissioner praised that second part of the citation as both "a significant enforcement mechanism" and "a means of expeditiously pursuing the collection of unpaid overtime wages." (*Ibid.*) Expeditious, she meant, relative to existing means of "enforcing a worker's right to overtime compensation": DLSE could "still prosecute overtime violations" through a civil action pursuant to section 1193.6 or a Berman hearing. (*Ibid.*) But the citation power was important because DLSE could issue citations without an advance hearing. (See § 558, subd. (b).) The commissioner, then, saw the amount corresponding to unpaid wages as a faster means of collecting the compensatory damages DLSE could already recover through a civil action and that *employees* could pursue directly by requesting a Berman hearing or filing a section 1194 claim.

Deeming the unpaid wages amount to be a civil penalty despite the existing enforcement mechanisms for those wages cannot be squared with the understanding of that term under the PAGA. Civil penalties are an interest of the state. Employees could not recover them until the PAGA authorized aggrieved employees to do so as agents of the state. In contrast, section 558's amount for unpaid wages merely supplemented pre-existing procedures available to employees for recovering their individual unpaid wages. Contrary to Lawson's contentions, these features make the unpaid wages the Labor Commissioner recovers under section 558 fundamentally different from the civil penalties an employee recovers under the PAGA. (See *Iskanian*, *supra*, 59 Cal.4th at p. 381.)

**B.**

Lawson takes a different view of section 558 and the Legislature's purpose in this context. As several courts of appeal have reasoned or assumed, she urges us to conclude that a straightforward reading of section 558 renders the amount for unpaid wages a civil penalty. (See *Thurman*, *supra*, 203 Cal.App.4th at p. 1145; *Bradstreet v. Wong* (2008) 161 Cal.App.4th 1440, 1451, abrogated on other grounds by *Martinez v. Combs* (2010) 49 Cal.4th 35; *Jones v. Gregory* (2006) 137 Cal.App.4th 798, 809, fn. 11, abrogated on other grounds by *Martinez*, *supra*, 49 Cal.4th 35; *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 378-379, 381.) She also relies on dictum in *Reynolds v. Bement* (2005) 36 Cal.4th 1075 (*Reynolds*), abrogated on other grounds by *Martinez*, stating the same. (*Id.* at p. 1089.)

Yet reading the relevant provisions in context, it becomes clear that unpaid wages the Labor Commissioner recovers through section 558 are separate from and additional to, rather than thoroughly included within, the civil penalty a private plaintiff may recover in a PAGA action. (See *United Riggers*, *supra*, 4 Cal.5th at p. 1089 ["Our role in interpreting statutes is to ascertain and effectuate the intended legislative purpose . . . [and] constru[e] words in their broader statutory context"].) Indeed, most of the cases Lawson cites did not have the benefit of considering section 1197.1's amended 2011 language, and even the *Thurman* court had no opportunity to consider the 2016 amendment's reference to "overtime compensation" under section 558. (§ 1197.1, subd. (c)(3).) Moreover, we did not squarely confront this issue in *Reynolds*, which concerned whether employees could seek recovery from individual

corporate agents, not the nature of that recovery under section 558.[8]  (See *Reynolds, supra,* 36 Cal.4th at p. 1089.)

Lawson also stresses the Legislature's presumed goals of increasing the government's authority to enforce existing and newly enhanced overtime protections and deterring employer violations of those protections.  According to her, we must read the amount for unpaid wages as a civil penalty in light of these purposes.  (See *Home Depot, U.S.A., Inc. v. Superior Court* (2010) 191 Cal.App.4th 210, 225 [" 'Civil penalties are inherently regulatory, not remedial,' and are intended to secure obedience 'to statutes and regulations validly adopted under the police power' "].)  Yet even compensatory relief intended "first and foremost to compensate employees for their injuries" (*Murphy, supra,* 40 Cal.4th at p. 1111)  may have an "incidental behavior-shaping purpose" (*id.* at p. 1110).  That the Legislature or Labor Commissioner believed the amount for unpaid wages would serve a compliance function does not necessarily make it a civil penalty.

Nor do we find the conclusion we have reached — that unpaid wages under section 558 must be distinguished from the civil penalty aggrieved employees may recover under the PAGA

---

[8]  To the extent *Thurman v. Bayshore Transit Management, supra,* 203 Cal.App.4th 1112, *Bradstreet v. Wong, supra,* 161 Cal.App.4th 1440, *Jones v. Gregory, supra,* 137 Cal.App.4th 798, and *Caliber Bodyworks, Inc. v. Superior Court, supra,* 134 Cal.App.4th 365 are inconsistent with our holding that unpaid wages under section 558 may not be recovered through a PAGA action, we disapprove them.  We also disapprove *Zakaryan v. The Men's Wearhouse, Inc., supra,* 33 Cal.App.5th 659, and *Mejia v. Merchants Building Maintenance, LLC* (2019) 38 Cal.App.5th 723, to the extent they are inconsistent with this holding.

— inconsistent with the Labor Code's broader remedial purpose or "the protection of employees" (*Augustus*, *supra*, 2 Cal.5th at p. 262). The citation procedure meaningfully enhanced enforcement of the Labor Code by establishing new civil penalties for wage and hour violations while also accelerating recovery of employees' unpaid wages. The Legislature could reasonably choose to make the former but not the latter available under the PAGA, as other remedies were already provided to resolve employees' unpaid wage claims. (See *ante*, at pp. 9-10.) This interpretation still lets employees pursue those remedies alongside PAGA claims to obtain full recovery. (See § 2699, subd. (g)(1).) As we explained in *Arias*, nonparty employees may even use the proof of a Labor Code violation in a successful PAGA action against an employer in a subsequent action for "lost wages" and other "remedies in addition to civil penalties." (*Arias*, *supra*, 46 Cal.4th at p. 987.) Nonparty employees are bound by the judgment in an action under the PAGA, but only with respect to recovery of civil penalties. (*Id.* at p. 986.) This is because the PAGA "authorizes a representative action only for the purpose of seeking [civil] penalties for Labor Code violations [citation], and an action to recover civil penalties 'is fundamentally a law enforcement action,' " not one for the benefit of private parties. (*Ibid.*)

Yet there is no question that nonparty employees may "invoke[e] collateral estoppel" in the future, "us[ing] the judgment against the employer to obtain remedies other than civil penalties for the same Labor Code violations." (*Id.* at p. 987.) This limited, non-mutual issue preclusion is permissible because the purpose of the underlying PAGA action itself is "to protect the public, and the potential impact on remedies other

than civil penalties is ancillary to the action's primary objective." (*Ibid.*) And our holding today tracks this distinction in *Arias* between civil penalties and additional remedies available under the Labor Code.

Finally, Lawson contends that unpaid wages recovered under section 558 meet the definition of "civil penalty" because prior to the PAGA, only the state could bring an action under section 558. (See *Iskanian, supra*, 59 Cal.4th at p. 381.) Yet while section 558 gave the state exclusive power to collect unpaid wages through its citation procedure, we have already explained that section 558 achieves the same result with respect to unpaid wages as the private right of action under section 1194. So only the fixed amount qualifies as a "civil penalty."

## IV.

We now address the consequences of our holding for ZB's motion to compel arbitration. *Iskanian* established an important principle: employers cannot compel employees to waive their right to enforce the state's interests when the PAGA has empowered employees to do so. But for *Iskanian* to apply, the state must in fact have delegated enforcement of its interests to private citizens. The Legislature used the PAGA to delegate enforcement of civil penalties. In contrast, we now hold that the "amount sufficient to recover underpaid wages" authorized in section 558, subdivision (a) constitutes compensatory relief — a type of recovery separate from its civil penalties. This reading properly reflects both the PAGA's purpose and section 558's purpose to enhance and streamline enforcement of the Labor Code's overtime and workday requirements.

When the Court of Appeal determined that the motion to compel arbitration should have been denied, it was operating on

the faulty premise that section 558's civil penalty includes unpaid wages. Yet the court's ultimate conclusion about ZB's motion was justified. We agree with the Court of Appeal that section 558 has no private right of action. Nor can employees recover the unpaid wages described in section 558 in a PAGA claim — even though section 558 permits the Labor Commissioner to include that amount in a citation. Simply put, Lawson's complaint alleges entitlement to relief she cannot seek because she lacks a cause of action: an amount for unpaid wages *under section 558.* ZB's motion sought to compel arbitration of only that impermissible request for relief rather than any valid claim the court could compel to arbitration. Accordingly, while we disagree with its reasoning, we conclude that the Court of Appeal correctly granted ZB's writ petition and ordered the trial court to deny ZB's motion to compel arbitration.

Given this conclusion, ZB has suggested the trial court strike from the complaint Lawson's allegation requesting unpaid wages. (See Code Civ. Proc., § 436.) Lawson, for her part, has indicated she would like to amend her complaint to request unpaid wages under an appropriate cause of action. (See *id.*, § 472.) The trial court may consider these issues on remand.

## V.

An employee's predispute agreement to individually arbitrate her claims is unenforceable where it blocks an employee's PAGA claim from proceeding. But a PAGA claim does not include unpaid wages under section 558. Because ZB's motion to compel arbitration concerned relief that was not cognizable under the sole cause of action in Lawson's complaint,

we affirm the judgment of the Court of Appeal and remand for proceedings consistent with this opinion.

**CUÉLLAR, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** ZB, N.A., and Zions Bancorporation v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 18 Cal.App.5th 705
**Rehearing Granted**

_____

**Opinion No.** S246711
**Date Filed:** September 12, 2019

_____

**Court:** Superior
**County:** San Diego
**Judge:** Joel M. Pressman

_____

**Counsel:**

Rutan & Tucker, James L. Morris, Brian C. Sinclair and Gerard M. Mooney for Petitioners.

Greines, Martin, Stein & Richland, Robert A. Olson and Cynthia E. Tobisman for California New Car Dealers Association as Amicus Curiae on behalf of Petitioners.

O'Melveny & Myers, Apalla U. Chopra, Andrew Lichtenstein, Adam J. Karr, Ryan W. Rutledge and Kelly Wood for the Employers Group and California Employment Law Council as Amici Curiae on behalf of Petitioners.

No appearance for Respondent Superior Court.

Altshuler Berzon, Michael Rubin, Kristin M. García; Lawyers for Justice, Edwin Aiwazian, Arby Aiwazian and Joanna Ghosh for Real Party in Interest.

Bryan Schwartz Law, Bryan J. Schwartz, Logan T. Talbot, Eduard R. Meleshinsky, DeCarol A. Davis for California Employment Lawyers Association as Amicus Curiae on behalf of Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Brian C. Sinclair
Rutan & Tucker
611 Anton Boulevard, Suite 1400
Costa Mesa, CA  92626-1931
(714) 641-5100

Michael Rubin
Altshuler Berzon
177 Post Street, Suite 300
San Francisco, CA  94108
(415) 421-7151