Filed 4/24/26  Barba v. Capstone Logistics CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANGEL BARBA,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CAPSTONE LOGISTICS, LLC,<br><br>        Defendant and Appellant. | A173018 |
| ANGEL BARBA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HOME DEPOT U.S.A., INC.,<br><br>    Defendant and Appellant. | A173020<br><br><br>(Alameda County Super. Ct. No. RG21100895) |

　　　　Angel Barba filed this action under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; "Private Attorneys General Act" or "the Act")[1] to seek remedies for allegedly unlawful employment practices by Capstone Logistics, LLC, and Home Depot U.S.A., Inc.  In these consolidated appeals, Capstone and Home Depot challenge the trial court's denial of their motion to compel arbitration.  Because the court correctly denied the motion, we affirm.

---

[1] Undesignated statutory references are to the Labor Code.

1

## BACKGROUND

### A.

In February 2019, Capstone and Barba entered into an arbitration agreement in connection with his employment as a warehouse worker for Capstone. Under the agreement, Barba's "continued employment with the Company is deemed to be acceptance of this Agreement to Arbitrate." The "Company" referred to Capstone Logistics, LLC, including "all parent, subsidiary, and affiliate entities, . . . and their owners, directors, officers, managers, employees, or agents." Barba and "the Company agree[d] to use binding arbitration, instead of going to court, as the sole and exclusive means to resolve any 'Covered Claims' that arise or have arisen between" them. Barba and the Company "waiv[ed] and relinquish[ed] [their] respective rights to trial before a judge or jury in federal or state court in favor of arbitration."

The agreement contained provisions specifying "Covered Claims" as well as "Excluded Claims." The term "Covered Claims" applies to "any claim, dispute, and/or controversy that [Barba] may have against the Company, or that the Company may have against [Barba], whether based on tort, contract, statute . . . , equitable law, or otherwise." The foregoing term "statute" is further defined as "including, but not limited to, any claims of discrimination, harassment, retaliation, leave, and/or unpaid wages, whether they be based on Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family Medical Leave Act, the Fair Labor Standards Act, or any other similar federal, state, or local law or regulation which may apply to the parties' employment relationship." In addition, "Covered Claims include but are not limited to any claim, dispute, and/or controversy that may arise out of or be related in any way to [Barba's] employment, including but not limited to the

2

termination of [his] employment and [his] compensation. Covered Claims also specifically include but are not limited to any claim, dispute, and/or controversy that [Barba] may have against, or that may be related in any way to the services [he] or the Company provides to, the Company's business partners or customers and their employees."

"Excluded Claims" are "[t]he only exceptions to the requirement of binding arbitration." The agreement enumerates specified types of excluded claims, one of which is "claims that are not subject to arbitration under current law."

In a section entitled "Waiver of Class and Collective Claims," the agreement provided that "Covered Claims will be arbitrated only on an individual basis." Further, the "[a]greement shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees or parties, or permit such claims or controversies to proceed as a class or collective action."

The arbitration agreement also included a merger clause and a severability clause.

## B.

To strengthen enforcement of the Labor Code, the Act authorized aggrieved employees to recover civil penalties, acting as private attorneys general on behalf of the state. (See *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1116 (*Adolph*); § 2699.) An employee who sues under the Act functions as an agent of the state—the real party in interest—and may seek any civil penalties that the state can seek. (*Adolph*, at pp. 1116-1117.)

3

To have standing to bring an action as an "aggrieved employee," under the version of the Act applicable to this case[2], the plaintiff must have been employed by the employer and suffered at least one Labor Code violation by the employer. (See *Adolph, supra*, 14 Cal.5th at pp. 1120-1121; § 2699, former subd. (c).) So long as the plaintiff has standing based on one personally suffered Labor Code violation, the plaintiff, as an agent of the state, may also prosecute Labor Code violations sustained by other employees of the same employer but not personally sustained by the plaintiff. (*See Adolph*, at p. 1122.) Thus, a plaintiff may bring personal or individual claims under the Act, as well as representative claims on behalf of other employees. (*See Adolph*, at pp. 1117-1118.)

## C.

In 2021, Barba filed the instant action asserting PAGA claims on behalf of himself and other aggrieved warehouse employees of Capstone and Home Depot, alleging that the two companies were joint employers. He alleged various violations of the wage and hour laws, including that Capstone and Home Depot failed to pay employees for off-the-clock work, failed to permit required rest periods, and provided inaccurate wage statements.

---

[2] After Barba filed his lawsuit in 2021, the Legislature passed amendments to the Act generally applicable to actions filed on or after June 19, 2024. (See Stats. 2024, ch. 44, § 1 [enacting Assembly Bill No. 2288 (2023-2024 Reg. Sess.), eff. Jul. 1, 2024]; *id.*, ch. 45, § 1 [enacting Senate Bill No. 92 (2023-2024 Reg. Sess.), eff. Jul. 1, 2024]; Stats. 2025, ch. 67, §§ 134-135 [enacting Assembly Bill No. 1170 (2025-2026 Reg. Sess.), eff. Jan. 1, 2026]; see also § 2699.5, subd. (b).) This opinion concerns the former version of the Act, applicable to Barba's action. (See § 2699, as amended by Stats. 2016, ch. 31, § 189, eff. Jun. 27, 2016.)

Relying on the arbitration agreement, Capstone moved to compel Barba to arbitrate his individual PAGA claims and to stay his representative claims pending arbitration. Home Depot joined in the motion. The trial court denied the motion, concluding that the arbitration agreement was unconscionable. The court determined that the agreement was procedurally unconscionable to some extent because it was required as part of the employment agreement. The agreement was substantively unconscionable for several reasons: it was overbroad because it included any type of claim even if unrelated to Barba's employment; it was infinite in duration because it applied to claims that arose both before and after Barba's employment; and it lacked mutuality because there was no way for Barba to know whether all the entities and individuals included in the definition of the "Company" had agreed to be bound by the agreement or whether Capstone had authority to bind them. Further, the court concluded that, although some of the unconscionable terms could be severed, the overbroad definition of "Company" could not be cured without reforming the definition. In addition, the court reasoned that the interests of justice did not support severing the unconscionable terms.

## DISCUSSION

Capstone and Home Depot assert that the trial court erroneously concluded the arbitration agreement was unconscionable. Barba argues that the trial court's ruling can be affirmed on an alternative ground: that his PAGA claims are excluded from arbitration under the agreement's "Excluded Claims" provision.[3] (See *D'Amico v. Board of Medical Examiners*

---

[3] The trial court's unconscionability ruling made it unnecessary for the court to address whether Barba's claims were "Excluded Claims." The court did state in the alternative, however, that had the court granted the motion to compel arbitration, it would have ordered arbitration of Barba's

5

(1974) 11 Cal.3d 1, 19 [explaining that if a trial court decision is " 'right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion' "].)  We agree with Barba, so we do not reach Capstone and Home Depot's arguments as to whether the agreement is unconscionable.

Reviewing the issue de novo, we apply principles of California contract law to interpret the arbitration agreement, giving the words in the contract their ordinary meaning.  (See *Ford v. The Silver F, Inc.* (2025) 110 Cal.App.5th 553, 565-566 (*Ford*).)  In interpreting the agreement, our goal is to determine " 'the mutual intention of the parties at the time the contract is formed.' "  (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18; see also *Ford*, at p. 567; Civ. Code, § 1636.)

Barba relies on the "Excluded Claims" section of the arbitration agreement, which provides that "[t]he only exceptions to the requirement of binding arbitration shall be for 'Excluded Claims.'  Excluded Claims are claims for medical and disability benefits, claims for workers' compensation, claims for unemployment benefits, claims asking for emergency or temporary injunctive relief in a court of law in accordance with applicable law . . . , or other *claims that are not subject to arbitration under current law*."  (Italics added.)  Barba argues that the agreement excludes PAGA claims because they were "not subject to arbitration under current law" in 2019, when he entered into the agreement.

In *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), overruled on other grounds by *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, our

_____

individual PAGA claims but denied the request for a stay of his representative claims; the implication was that the court believed the claims were not excluded.

Supreme Court considered an agreement that, in the course of requiring arbitration of an employee's individual claims, purported to categorically waive the employee's right to bring representative PAGA actions under the Act. Section 2699, subdivision (a), grants any aggrieved employee the right to bring a civil action on behalf of himself or herself " 'and other current or former employees.' " (See *Iskanian*, at p. 383.) *Iskanian* explained that "an agreement by employees to waive their right to bring a PAGA action serves to disable one of the primary mechanisms for enforcing the Labor Code" and frustrates the goals of the statute. (*Iskanian*, at pp. 383-384.) Further, although an individual employee is free to choose not to bring a PAGA lawsuit in the face of Labor Code violations, "it is contrary to public policy for an employment agreement to eliminate this choice altogether by requiring employees to waive the right to bring a PAGA action before any dispute arises." (*Iskanian*, at p. 383.) *Iskanian* concluded that because "an employee's right to bring a PAGA action is unwaivable," an "agreement requiring an employee . . . to give up the right to bring representative PAGA actions in any forum is contrary to public policy" and unenforceable as a matter of state law. (*Id*. at pp. 360, 383-384; see also *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 181 [explaining that *Iskanian* held that "a court may not enforce an employee's alleged predispute waiver of the right to bring a PAGA claim in any forum"].)

After *Iskanian*, the courts of appeal held that employees could not be compelled to arbitrate their representative PAGA claims, and representative and individual PAGA claims could not be split into bifurcated proceedings. (See, e.g., *Lawson v. ZB, N.A.* (2017) 18 Cal.App.5th 705, 725, affd. but abrogated on other grounds *sub nom*. *ZB, N.A. v. Superior Court, supra,* 8 Cal.5th 175; *Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408, 421-422; *Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 645, 649-650; see also, e.g., *Hernandez v. Ross Stores, Inc.* (2016)

7

7 Cal.App.5th 171, 178.) The upshot of the foregoing case law was that in 2019, at the time Barba acknowledged the arbitration agreement, employers could not compel arbitration of PAGA claims, and in that respect such claims were "not subject to arbitration under current law."

Capstone and Home Depot do not dispute that, if "current law" is understood to mean the law in effect at the time the agreement was formed, then PAGA claims were "not subject to arbitration under current law." But they argue that under the United States Supreme Court's subsequent decision in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*), individual PAGA claims *can* be compelled to arbitration. *Viking River* held that a rule against bifurcated proceedings for individual and non-individual PAGA claims frustrates the Federal Arbitration Act by defeating the parties' ability to contractually determine which claims are subject to arbitration and which are not. (*Viking River,* at pp. 660-662.) As a result, *Viking River* concluded, the Federal Arbitration Act preempts the rule of *Iskanian* to the extent it prevents enforcement of an agreement to arbitrate individual PAGA claims. (*Id.*, at pp. 660-662.) *Viking River* did not disturb *Iskanian's* determination that wholesale waivers of PAGA claims are invalid. (*See id.* at p. 662.) According to Capstone and Home Depot, *Viking River* must be applied here to determine the claims that are "not subject to arbitration under current law" because *Viking River*'s holding applies to arbitration agreements that predated the Supreme Court's opinion. (See, e.g., *ibid.* [applying the newly announced holding to the arbitration agreement in that case.].)

The circumstances here are different, however. In *Viking River*, there was no dispute about the parties' mutual intention to arbitrate the employee's individual PAGA claim—the question was to what extent the parties' agreement was enforceable under California law and the Federal Arbitration Act. (See *Viking*

8

*River*, *supra*, 596 U.S. at pp. 643, 647-648, 649.)  Here, we are instead tasked with interpreting the agreement to determine what claims Barba and Capstone did, and did not, intend to arbitrate.  *Viking River*'s 2022 holding—permitting the enforcement of agreements to arbitrate individual PAGA claims—does not tell us what claims Barba and Capstone intended to exclude in 2019 as "not subject to arbitration under current law."

Ford is instructive.  In *Ford*, the court considered a pre-*Viking River* arbitration agreement that excluded " 'representative claims under [PAGA],' " and the question was what the parties meant by this phrase.  (*Ford*, *supra*, 110 Cal.App.5th at pp. 558, 566.)  *Ford* concluded that *Viking River* did not inform what the parties meant years before when they used the term " 'representative claims,' " reasoning that "[a]lthough *Viking River* may have changed the law about whether PAGA claims are divisible into individual and nonindividual components [citation], *Viking River* did not change the principle that a party cannot be compelled to arbitrate a dispute that he or she did not agree to resolve by arbitration." (*Ford,* at p. 569; see also *LaCour v. Marshalls of CA, LLC* (2025) 117 Cal.App.5th 505, 522 (*LaCour*) ["Although we now know that PAGA actions *can* be ' "divided into individual and non-individual claims" where the parties have agreed to arbitrate individual claims' [citation], the fact that that is the case today tells us nothing about whether [the parties] actually made such an agreement more than a decade ago."]; *Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 613 ["*Viking River* has nothing to say about whether there was an [earlier] agreement to arbitrate [the employee's] individual PAGA claims."].)  Similarly here, *Viking River* does not help us understand what claims the parties agreed to exclude several years before *Viking River* was decided.

Capstone and Home Depot next argue that the term "current law" should be understood to mean the law in effect at the time the agreement is being enforced.[4]  We are unpersuaded. The "temporal benchmark we must use in ascertaining the parties' mutual intent" is the time the contract was formed. (*LaCour, supra,* 117 Cal.App.5th at p. 521.)  We ordinarily presume the parties are aware of and have in mind " ' "all applicable laws in existence when an agreement is made." ' " (*City of Torrance v. Workers' Comp. Appeals Bd.* (1982) 32 Cal.3d 371, 378-379; see also *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 954; *Swenson v. File* (1970) 3 Cal.3d 389, 394-395 (*Swenson*).)  Although the parties to a contract could agree to incorporate subsequent changes in law, we will not assume that they did so in the absence of evidence of such an intention.  (See *Swenson*, at p. 395.)  Otherwise, our Supreme Court has explained, "to hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties become part of that agreement would result in modifying it without their consent."  (*Id.* at p. 394.)

Turning to the language used by the parties here, the exclusion clause uses the temporally limited term "current law." That temporal limitation expresses the parties' intent that the exclusion be governed by the law existing at the time the contract was formed.  (See Civ. Code, § 1636.)  This interpretation is reinforced by the parties' use of the same term in the agreement's

---

[4] After briefing was completed, Capstone requested that we take judicial notice of three unpublished decisions, including one superior court order, in connection with this issue.  Capstone's belated request improperly attempts to circumvent California Rules of Court, rule 8.1115, which prohibits citing or relying on an unpublished opinion except in circumstances inapplicable here.  (See *People v. Webster* (1991) 54 Cal.3d 411, 428, fn. 4 [discussing the identically-worded predecessor rule, Cal. Rules of Court, rule 977(a), (b)].)  We therefore deny the request.

"Rules for Arbitration" provision, which provides a link to the "current version" of the employment dispute resolution rules of the American Arbitration Association at the time Barba signed the agreement. No evidence supports the notion that the parties intended to give the same term two different meanings. Moreover, the exclusion provision's broader reference to "claims asking for emergency or temporary injunctive relief in a court of law in accordance with *applicable law*" (italics added) further demonstrates, by contrast, that "current law" does not refer to legal developments that may subsequently become applicable. In other parts of the agreement, several references to "controlling law," "the law governing the claims and defenses pleaded," and "applicable law," like the exclusion clause's use of "applicable law," further underscore that the parties did not intend the term "current law" to refer to or include all potentially applicable changes in law. Had the parties intended to incorporate all "applicable" law or "controlling" law, whenever developed, into the exclusion, they could have used one of the broader formulations included elsewhere in the agreement, but they did not. (See *Alameda County Flood Control & Water Conservation Dist. v. Department of Water Resources* (2013) 213 Cal.App.4th 1163, 1186 [explaining that the interpretive rule in contract cases is that " 'in the absence of any expression in the contract to the contrary, . . . words which are not synonymous were never intended to be so used.' "].)

In light of the foregoing language in the agreement, the words "current law" cannot be reasonably construed to refer to the law in effect at the time of enforcement. Because the parties agreed to exclude these claims from arbitration, our state's strong public policy favoring arbitration, on which Capstone and Home Depot rely, is of no assistance here. (See *Quach v. California Commerce Club, Inc.*, *supra*, 16 Cal.5th at p. 580 ["the state policy ' "favoring" ' arbitration, like the federal policy, 'is about treating arbitration contracts like all others, not about fostering

11

arbitration' "], quoting *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 418.)

In sum, Barba's PAGA claims are excluded by the arbitration agreement as claims "not subject to arbitration under current law."

## DISPOSITION

The trial court's order denying the motion to compel arbitration is affirmed.

BURNS, J.

WE CONCUR:

JACKSON, P. J.
SIMONS, J.

*Barba v. Capstone Logistics, LLC (A173018) / Barba v. Home Depot U.S.A., Inc. (A173020)*

12