Filed 10/27/20  P. v. Jackson CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEX JACKSON,<br><br>    Defendant and Appellant. | B300276<br>(Los Angeles County<br> Super. Ct. No. MA059722) |

APPEAL from a post-conviction order of the Superior Court of Los Angeles County, Lisa M. Chung, Judge.  Affirmed.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Alex Jackson of second degree murder, for which he received a prison sentence of 15 years to life. He appeals from a denial of his petition for resentencing pursuant to Penal Code[1] section 1170.95 (petition), for relief under Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437), which established a procedure for resentencing of a defendant convicted of felony murder or murder under the natural and probable consequences theory if the defendant could no longer be convicted of murder based on recent amendments to sections 188 and 189. Appellant contends the trial court failed to adhere to the statutorily mandated procedure when it denied his petition without appointing him counsel, and without opposition from the prosecutor. We disagree. After receiving opposition to the petition from the prosecution, the court granted appellant's request for appointed counsel, and counsel filed a reply. Thereafter, the trial court found there was no basis for relief under section 1170.95 as a matter of law. We find no error, and affirm.

## FACTUAL BACKGROUND[2]

In early May 2013, while on a morning walk in Littlerock, Pamela Devitt was attacked and severely injured by at least four of appellant's

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    Our factual narrative is drawn from our opinion in the prior appeal in this matter. (*People v. Jackson* (April 18, 2016, B259906) [nonpub. opn.], 2016 WL 1583600 (*Jackson*).) We granted appellant's request and take judicial notice of the  record in *Jackson*. (Evid. Code, § 452, subd. (d).)

2

pit bulls.  Devitt died in an ambulance en route to the hospital. (*Jackson, supra*, 2016 WL 1583600 at pp. *1–*2.)

Appellant lived on a large lot in Littlerock and cultivated marijuana and psilocybin for sale.  He regularly took in stray dogs (including five to 10 pit bulls) abandoned in the desert.  The dogs guarded the fenced property, protecting appellant's drug production and sales operation.  In the 14 months preceding Devitt's murder, dogs that escaped from appellant's yard committed multiple attacks in which at least nine people and/or their horses were injured.  (*Jackson, supra*, 2016 WL 1583600 at pp. *1–*3.)  Appellant watched at least two of those attacks as they took place, but did little or nothing to contain or control his dogs.  (*Id*. at pp. *2–*3.)  Numerous complaints were lodged with the sheriff's and animal control departments, and appellant was warned repeatedly to contain the dogs.  (*Id*. at pp. *1–*3.)  Locals offered appellant materials to secure his fence, and he claimed to have twice added material to his picket fence to make it more structurally sound and prevent the dogs from escaping.  (*Id*. at p. *2.)  Most, if not all, of the attacks occurred after appellant claimed to have reinforced the fence.  (*Id*. at p. *3.)

After Devitt was killed, the dogs were removed from appellant and deputies discovered his marijuana and psilocybin operation.  (*Jackson, supra*, 2016 WL 1583600 at p. *3.)

3

## PROCEDURAL BACKGROUND

At trial, appellant was charged with murder (§ 187, subd. (a)); assault with a deadly weapon (he threw a rock at someone the dogs had attacked) § 245, subd. (a)(1)); cultivating marijuana (Health & Saf. Code, § 11358); possession of marijuana for sale (Health & Saf. Code, § 11359); and possession for sale of a controlled substance (psilocybin) (Health & Saf. Code, § 11378). A jury found appellant guilty of second degree murder and guilty on all other counts, except for assault with a deadly weapon. He was sentenced to 15 years to life for the murder conviction. (*Jackson, supra*, 2016 WL 1583600 at p. *3.) We affirmed the judgment. (*Jackson,* at p. *7.)

On February 25, 2019, appellant, then self-represented, filed a form petition for resentencing. He checked boxes stating he met the requirements of section 1170.95 for relief under SB 1437 and attached an explanatory paragraph.

On March 25, 2019, the prosecution filed a 19-page opposition, in which it devoted 18 pages to the argument that section 1170.95 was unconstitutional. In the remaining page, the prosecution argued appellant was not eligible for relief under section 1170.95 because, notwithstanding his claim to the contrary, the record demonstrated he was the actual killer, not an accomplice, and his conviction of second degree murder was based on implied malice, as demonstrated by the jury instructions.

The trial court—the judge who had presided over the trial— appointed counsel, who filed a lengthy reply brief on appellant's behalf

on June 16, 2019. That brief was devoted solely to the argument that section 1170.95 was constitutional.[3]

At a July 8, 2019 hearing on the petition, the parties submitted on the papers, without argument. The court denied the petition on the ground that appellant was not entitled to relief under section 1170.95 as a matter of law. The court rejected the argument that section 1170.95 (SB 1437) was unconstitutional. Turning to the substance of the petition, the court noted it had reviewed the terms of section 1170.95, its notes from trial and the instructions given to the jury. The court found appellant had failed to establish a prima facie case showing his eligibility for relief because he was not tried under either the felony murder rule or the natural and probable consequences doctrine.[4] The court noted its findings were made over the objection of defendant's counsel, who claimed (for the first time at the hearing) that, at the time he filed the reply brief, he lacked complete material regarding the

---

[3] In his reply brief in support of the petition, appellant's appointed counsel noted the brief was "solely addressed to the issue of the constitutionality of [section 1170.95]," but he reserved the right to address "any issues, facts, or law that may bear on, or relate, to [appellant's] eligibility" for relief under that statute. As we discuss, *infra*, the record establishes as a matter of law that appellant is not entitled to relief. Therefore, the failure of counsel in the trial court to brief this issue is immaterial to the outcome of this appeal.

[4] Independently, the court also found appellant failed to make a prima facie showing of eligibility because he had been a "major participant" who "act[ed] with reckless indifference to human life." We need not discuss this alternative basis, because (as we explain) no theory of vicarious liability was involved in this case.

5

issues at trial, and had "reserve[d] the right to respond" on the merits. This timely appeal followed.

## DISCUSSION

In his opening brief on appeal, appellant maintains the trial court erred in denying his petition for resentencing, because his petition alleged a prima facie case for resentencing, which the court denied without granting his request for appointed counsel, and without receiving opposition from the prosecution. As our summary of the procedural history demonstrates, the contention is based on a misstatement of the record. The trial court, in fact, appointed counsel and received opposition from the prosecution and reply briefing from appointed counsel.[5] In any event, the trial court's ruling must be upheld, because, as a matter of law, appellant is not entitled to relief.

### I.  *Statutory Principles and the Standard of Review*

"[SB] 1437 [effective Jan. 1, 2019] was enacted to 'amend the felony murder rule and the natural and probable consequences doctrine, . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant of the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)  [SB]

---

[5]     In his reply brief on appeal, appellant concedes that the trial court granted his request for counsel, but fails to explain his initial misrepresentation.

6

1437 achieves these goals by amending section 188 to require that a principal act with express or implied malice and by amending section 189 to state that a person can only be liable for felony murder if (1) the 'person was the actual killer'; (2) the person was an aider or abettor in the commission of murder in the first degree; or (3) the 'person was a major participant in the underling felony and acted with reckless indifference to human life.' (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, §§ 2, 3.)" (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 57 (*Cornelius*), review granted March 18, 2020, No. S260410.)

"[S]ection 1170.95 . . . allows a 'person convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts.' (§ 1170.95, subd. (a).) . . . [A]ll three of the following conditions must be met: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first or second degree murder following a trial . . . . [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 [effective beginning Jan. 2019].' [Citation.]" (*Cornelius, supra*, 44 Cal.App.5th at p. 57, citing § 1170.95, subd. (b)(1).)

The Legislature intended a three-step evaluation for a section 1170.95 petition. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 328,

7

332–333 (*Verdugo*), rev. granted March 18, 2020, S260493; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177, review granted June 24, 2020, S262011 ["subdivisions (b) and (c) of [section 1170.95] require the trial court to make three separate determinations"].)  At the initial stage, "[i]f any of the required information is missing and cannot be readily ascertained by the court, 'the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information.' (§ 1170.95, subd. (b)(2).)  [¶]  If the petition contains all required information, section 1170.95, subdivision (c), prescribes a two-step process for the court to determine if an order to show cause should issue:  'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . .  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'" (*Verdugo*, at p. 327; see *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165–1166 (*Nguyen*) [§ 1170.95, subd. (c), provides for two prima facie reviews].)

In determining whether the petitioner has made a prima facie showing that he or she is entitled to relief under section 1170.95, subdivision (c), "[t]he trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that

8

are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing. . . . [I]f the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.] However, this authority to make determinations without conducting an evidentiary hearing pursuant . . . is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*); accord, *Nguyen, supra*, 53 Cal.App.5th at pp. 1165–1166.)

"[O]ur analysis of the trial court's order focuses on the trial court's interpretation of section 1170.95(c), and we therefore review its order de novo." (*Drayton, supra*, 47 Cal.App.5th at p. 981; see *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 188–189 [questions of statutory interpretation are reviewed de novo]; *Verdugo, supra*, 44 Cal.App.5th at p. 328, fn. 8 [the appellate court's principal task in interpreting a statute is to determine Legislative intent and give effect to the law's purpose].) We independently review whether the trial court properly interpreted and fulfilled its duty under the statute. (See *Greene v. Marin County Flood Control & Water Conservation Dist.* (2010) 49 Cal.4th 277, 287 [questions of law are reviewed de novo].)

*The Trial Court Did Not Err in Denying the Petition*

Here, the record of appellant's conviction establishes that none of the theories of vicarious liability implicated by section 1170.95—the natural and probable consequences theory of aiding and abetting, and felony murder where the defendant is neither the actual killer nor a direct aider and abettor—were involved. As we explained in our opinion affirming appellant's conviction of second degree murder, "The second degree murder instruction given to the jury required the People to prove beyond a reasonable doubt that: (1) 'The defendant committed an act or failed to do a required act that caused the death of another person;' and (2) 'When the defendant acted or failed to do a required act, he had a state of mind called malice aforethought.'" (*Jackson, supra*, 2016 WL 1583600 at p. *3.)

Insofar as the instruction referred to a failure to do an act, we noted that the trial court failed to expressly define the legal duty that would make a failure to act an actus reus for second degree murder. We explained that duty as follows: "If an animal creates a foreseeable risk of injury to others, the owner 'has a duty to anticipate the harm and to exercise ordinary care to prevent the harm. [Citation.]'" (*Jackson, supra*, 2016 WL 1583600 at p. *4.) Assuming (without deciding) the failure to define this duty was error, we found the error harmless: "The evidence established that appellant had notice his dogs were jumping over his fence, attacking passersby, and that he failed to exercise ordinary care by failing to remedy the situation. In closing, the prosecutor argued to the jury that '[i]t is the owner's job to keep us

10

safe[,]' when the owner knows that his dogs are dangerous, and have attacked people.  Thus, in the absence of the assumed error—the failure to define the relevant duty in the murder instruction—it is not reasonably probable that a different result would have been reached.  The evidence left no doubt that defendant owed a duty to take reasonable precautions to control his dangerous dogs, that he failed to do so, and that his failure caused the victim's death." (*Jackson, supra*, 2016 WL 1583600 at p. *4.)

We further found the evidence sufficient to support the jury's finding of implied malice:  "Under the malice aforethought instruction, the jury was required to find that appellant acted with implied malice if:  (1) 'He intentionally committed an act or failed to do a required act;' (2) 'The natural and probable consequences of the act or failure to do a required act were dangerous to human life;'[6] (3) 'At the time he acted or failed to do a required act, he knew his act or failure to do a required act was dangerous to human life;' and (4) 'He deliberately acted with conscious disregard for human life.'  [¶]  In this case, the requirement of intent to commit an act or intentional failure to do a required act element was satisfied by the following evidence:  appellant's awareness of the attempted attacks by his dogs; awareness that his fence was inadequate to keep the dogs from reaching persons who came close to the property; related failure to take any other steps from preventing the

---

[6]      We note that jury was instructed on natural and probable consequences only in terms of causation for implied malice.  The jury was not instructed on the natural and probable consequences doctrine as it relates to aider and abettor liability.

11

dogs from jumping over the fence; efforts to hide the dogs; denial of owning them; and motive for doing so—his illegal marijuana operation on the property. The natural and probable consequences of his failure to keep his dogs from jumping the fence were dangerous to human life was shown by evidence that when the dogs jumped the fence, they attacked horseback riders, and then on May 9, 2013, the dogs fatally attacked the victim. Appellant knew his failure to keep the dogs from jumping his fence was dangerous to human life because he was on notice the dogs had caused injuries to the horses, and on at least one occasion, to a rider. Finally, it is reasonable for the jury to have found that appellant acted with conscious disregard for human life. He was on notice that the pit bulls had attacked horseback riders, he knew his failure to keep the dogs from jumping the fence was dangerous to human life, and still he made a deliberate decision to do nothing. Because he was engaged in an illegal activity, he had a reason to keep people away from his property. Furthermore, there is evidence he was trying to hide the fact that he had pit bulls and at times denied he had pit bulls, which shows his consciousness of guilt." (*Jackson, supra*, 2016 WL 1583600 at p. *5.)

In short, the record establishes, as a matter of law, that the jury convicted defendant of second degree murder on a theory implied malice, based on his personal acts or failure to act resulting in the death of a human being. No theory of vicarious liability implicated by section 1170.95 was involved. Thus, defendant is not entitled to relief as a matter of law, and the trial court's ruling is affirmed.

12

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.

We concur:


MANELLA, P. J.


CURREY, J.

13