Filed 12/17/20  P. v. Carroll CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MAURICE VERNELL CARROLL, <br><br> Defendant and Appellant. | B299815 <br><br> (Los Angeles County Super. Ct. No. BA203327) |

APPEAL from an order of the Superior Court of Los Angeles County, William R. Pounders, Judge.  Affirmed.

Doris M. LeRoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Maurice Vernell Carroll appeals from a postjudgment order summarily denying his petition for resentencing under Penal Code section 1170.95[1] as to his first degree murder conviction. Carroll contends because his petition stated the necessary elements for eligibility for relief, the superior court erred in denying his petition without appointing counsel. Because the record of conviction shows Carroll was either the actual shooter or aided and abetted the shooter with the intent to kill, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Shooting*

On May 16, 2000 Carroll and Terrell Cunningham, both members of the Rollin 20's gang, entered a video store.[2] After warning a customer to leave the store, Cunningham pulled out a gun and pointed it at Roberto Garcia, the owner of the store, and Reynaldo Araujo, Garcia's nephew. Cunningham ordered Garcia

---

[1] All statutory references are to the Penal code.

[2] The summary of facts is drawn from our opinion in *People v. Carroll* (Sept. 10, 2003, B157628) (nonpub. opn.) (*Carroll I*). On September 28, 2020 the People filed a request for judicial notice asking this court to take judicial notice of the appellate records and our opinion in *Carroll I*. We denied the request to take judicial notice of the opinion as unnecessary and construed the remainder of the request as a motion to augment the record on appeal, which we granted. Carroll filed a motion to diminish the record on appeal on the basis that "nothing in the record of the proceedings appealed from herein indicates the prior appellate record was before the court below when it ruled." Because we do not rely on the appellate record in *Carroll I*, we grant Carroll's motion.

2

and Araujo into a corner at the back of the store and told them to get on the floor. When Cunningham demanded to know where Garcia kept the money, Garcia told him there was no money.

Cunningham then directed Garcia and Araujo to the cash register and ordered them to open it. When Cunningham discovered the register only had five dollars, Cunningham became angry and demanded, "'Show me the money or I'll kill you both.'" Cunningham took Garcia and Araujo to the back of the store, made them lie on the floor, and emptied their pockets. Carroll, who had been stuffing video games into garbage bags, said to Cunningham, "'Let me kill them both.'" After hearing this, Garcia jumped up and ran out the back door. As he was escaping, Garcia heard gunshots. Garcia then saw Carroll and Cunningham drive away. The police arrived and discovered Araujo's body in the back room. He had died from three fatal gunshots, one to the back of his head and two to his back.

Although Carroll initially bragged that he had been the shooter, he changed his story after discovering that Cunningham "had snitched." Cunningham claimed Carroll was the shooter. According to Cunningham, he gave the gun to Carroll to watch Garcia and Araujo while Cunningham went to the door to speak to the "lookout." When he opened the door, Cunningham heard the shots, and then he and Carroll ran to the getaway vehicle.

B.  *Carroll's Conviction and Appeal*

Carroll and Cunningham were tried before separate juries. The jury found Carroll guilty of the murder of Araujo (§ 187, subd. (a); count 1), and it found true the special circumstance that the murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)(A)). The jury also found Carroll

3

guilty of the attempted willful, deliberate, and premeditated murder of Garcia (§§ 187, subd. (a), 664, subd. (a); count 2). Further, the jury found Carroll guilty of the robberies of Araujo and Garcia (§ 211; counts 3 & 4). The jury found true as to each count the gang enhancement allegation (§ 186.22, subd. (b)(1)) and that in the commission of the crimes a principal personally used a firearm, personally and intentionally discharged a firearm, and personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subds. (b), (c), (d) & (e)(1)). The jury did not find true the allegations Carroll personally used and discharged a firearm, causing great bodily injury or death (§ 12022.53, subds. (b), (c), (d)).[3] The trial court sentenced Carroll to life without the possibility of parole plus a consecutive sentence of 25 years to life for the firearm-use enhancement under section 12022.53, subdivisions (d) and (e)(1). (*Carroll I, supra*, B157628.)

We affirmed Carroll's convictions but concluded the trial court erred by failing to instruct the jury on the special circumstance allegation with CALJIC No. 8.80.1, which explains the mental state required for a true finding. However, we found the error harmless beyond a reasonable doubt, reasoning, "In Carroll's case, even if his jury found he was not the actual killer but instead was an aider and abettor, they necessarily found he

---

[3]     The jury found Cunningham guilty of first degree murder and two counts of robbery, and it found true the special circumstance, gang, and firearm-use allegations, except for the allegation Cunningham personally and intentionally discharged a firearm. However, the jury was unable to reach a verdict on the attempted murder charge, and the court declared a mistrial on that count. (*Carroll I, supra*, B157628.)

intended to kill under other properly given jury instructions. Carroll's jury found him guilty of the attempted murder of Garcia.  Under the court's instructions in order to find him guilty of this charge his jury had to find 'the person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being.'  In addition, Carroll's jury found true the special allegation the murder attempted was 'willful, deliberate and premeditated.'  These findings establish beyond doubt the jury was convinced Carroll harbored an intent to kill.  Moreover, because the murder and attempted murder occurred nearly simultaneously, in very close quarters, and were presumably motivated by the same frustration over the lack of loot and desire to eliminate witnesses to the robbery, any reasonable juror would have found Carroll harbored the identical intent to kill with regard to both of his victims."[4]  (*Carroll I*, *supra*, B157628, fns. omitted.)

C.    *Carroll's Petition for Resentencing*

On May 31, 2019 Carroll, representing himself, filed a form petition for resentencing and supporting declaration seeking to vacate his murder conviction and be resentenced in accordance with recent statutory changes relating to accomplice liability for murder.  In his petition, Carroll declared he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019"; he "was not the actual killer"; he "did not, with the intent to kill, aid,

---

[4]    In his closing argument the prosecutor acknowledged there was not sufficient evidence from which the jury could conclude beyond a reasonable doubt whether Carroll or Cunningham was the actual shooter.  (*Carroll I*, *supra*, B157628.)

5

abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; and "[t]here has been a prior determination by a court or jury that [he] was not a major participant and/or did not act with reckless indifference to human life." Carroll also requested the court appoint an attorney for him.

On June 11, 2019 the superior court summarily denied Carroll's petition for resentencing. In its ruling, the court recited the facts set forth in *Carroll I* and explained, "The appellate court acknowledged the mental state required for a true finding of a felony-murder special circumstance for an aider and abettor; i.e., the aider and abettor had to have the intent to kill or be a major participant in the underlying felony and acted with reckless indifference to human life. The court held 'in Carroll's case, even if his jury found he was not the actual killer but instead was an aider and abettor, they necessarily found he intended to kill under other properly given jury instructions.'" The court also relied on the conclusion in *Carroll I* that because the murder and attempted murder occurred almost simultaneously in very close quarters with the same motivation, "'any reasonable juror would have found Carroll harbored the identical intent to kill with regard to both of his victims.'" Carroll again appealed.[5]

---

[5] Carroll's attorney initially filed a brief in which she raised no issues. (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1040, review granted Oct. 14, 2020, S264278; *People v. Serrano* (2012) 211 Cal.App.4th 496, 503.) However, we requested supplemental briefing on the following issues: "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under section 1170.95? [¶] (2) When does the right to appointed

6

**DISCUSSION**

A.    *Senate Bill No. 1437*

On September 30, 2018 Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) was signed into law, effective January 1, 2019.  Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill 1437 (2017-2018 Reg. Sess.) § 1; see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 325 (*Verdugo*), review granted Mar. 18, 2020, S260493; *People v. Perez* (2020) 54 Cal.App.5th 896, 902 (*Perez*), review granted Dec. 9, 2020, S265254.)

New section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."  Senate Bill 1437 also added section 189, subdivision (e), which provides, "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1)  The person was the actual killer.  [¶]  (2)  The person was not the actual killer, but, with the

---

counsel arise under section 1170.95, subdivision (c)?"  In response to our order, Carroll and the People filed supplemental briefs.

7

intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3)  The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also provides a procedure in new section 1170.95 for an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189.  (Sen. Bill 1437 (2017-2018 Reg. Sess.) § 4.)  Section 1170.95, subdivision (b)(1), provides that the petition "shall be filed with the court that sentenced the petitioner."  The petition must include a declaration by the petitioner stating he or she is eligible for relief under the section, providing the superior court case number and year of the conviction, and indicating whether he or she requests the appointment of counsel.  (§ 1170.95, subd. (b)(1).)

As we concluded in *Verdugo*, the Legislature intended for there to be a three-step evaluation of a section 1170.95 petition.  (*Verdugo, supra*, 44 Cal.App.5th at pp. 328, 332-333; see *Perez, supra*, 54 Cal.App.5th at p. 903.)  "If any of the required information is missing and cannot be readily ascertained by the court, 'the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information.' (§ 1170.95, subd. (b)(2).)  [¶]  If the petition contains all required information, section 1170.95, subdivision (c), prescribes a two-

8

step process for the court to determine if an order to show cause should issue: 'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'" (*Verdugo*, at p. 327; accord, *Perez*, at p. 903; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165 (*Nguyen*) [§ 1170.95, subd. (c), provides for two prima facie reviews]; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 900-901, review granted Aug. 12, 2020, S263219 (*Tarkington*); *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177, review granted June 24, 2020, S262011 ["subdivisions (b) and (c) of [section 1170.95] require the trial court to make three separate determinations"].)

"In determining whether the petitioner has made a prima facie showing that he or she is entitled to relief under section 1170.95, subdivision (c), '[t]he trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing. Just as in habeas corpus, if the record "contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner." [Citation.] However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95,

subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion . . . .'" (*Perez, supra*, 54 Cal.App.5th at pp. 903-904, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980; accord, *Nguyen, supra*, 53 Cal.App.5th at p. 1166.)

After issuing an order to show cause, the trial court must hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (§ 1170.95, subd. (d)(1).) If a hearing is held, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3); see *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.)[6] The prosecution has the burden of proving beyond a reasonable doubt the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

B.      *The Trial Court Did Not Err in Failing To Appoint Counsel Before Denying Carroll's Petition for Resentencing*

Carroll urges us to follow the First District's holding in *People v. Cooper* (2020) 54 Cal.App.5th 106, 123, review granted

---

[6]      The Supreme Court in *People v. Lewis* limited briefing and argument to the following issues: "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)[?]" (Supreme Ct. Mins., Mar. 18, 2020, p. 364; *People v. Lewis, supra*, 43 Cal.App.5th 1128.)

10

November 10, 2020, S264684, and the dissenting opinion in *Tarkington, supra,* 49 Cal.App.5th at page 915 (dis. opn. of Lavin, J.), which rejected our conclusion in *Verdugo* that section 1170.95 only requires appointment of counsel after the superior court determines as part of its first prima facie review the petitioner is eligible for relief. The Court of Appeal in *Cooper* instead held "a petitioner is entitled to counsel upon the filing of a facially sufficient petition for relief that requests counsel be appointed." (*Cooper*, at p. 123; accord, *Tarkington*, at pp. 917, 927 (dis. opn. of Lavin, J.).) The *Cooper* court explained, "We decline to adopt the view that section 1170.95(c) requires two prima facie reviews—much less two reviews that are substantively different—and entitles a petitioner to counsel during only the second one. Rather, we read subdivision (c)'s first sentence—'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section'—as a topic sentence summarizing the trial court's task before issuing an order to show cause, and the following sentences to specify the procedure in undertaking that task. In our view, this conclusion is supported by both the statute's language and its legislative history." (*Cooper*, at p. 118.)

We decline Carroll's invitation to follow *Cooper* and the dissent in *Tarkington*.[7] Rather, as we explained in *Verdugo*, to

---

[7] "[O]ur analysis of the trial court's order focuses on the trial court's interpretation of section 1170.95(c), and we therefore review its order de novo." (*People v. Drayton, supra,* 47 Cal.App.5th at p. 981; accord, *People v. Murillo* (2020) 54 Cal.App.5th 160, 167, review granted Nov. 18, 2020, S264978; see *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 188 [questions of statutory interpretation are reviewed de novo].)

determine whether the petitioner is eligible for relief (the first prima facie review), "the court must at least examine the complaint, information or indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea; and the abstract of judgment." (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330.) We added, "The record of conviction might also include other information that establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189 (see § 1170.95, subd. (a)(3))—for example, a petitioner who admitted being the actual killer as part of a guilty plea or who was found to have personally and intentionally discharged a firearm causing great bodily injury or death in a single victim homicide within the meaning of section 12022.53, subdivision (d)." (*Id*. at p. 330.) Further, "[a] court of appeal opinion, whether or not published, is part of the appellant's record of conviction." (*Id*. at p. 333.)

As discussed, we concluded in *Carroll I* that because the jury found Carroll, in committing the attempted willful, deliberate, and premeditated murder of Araujo, "'harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being,'" "any reasonable juror would have found Carroll harbored the identical intent to kill with regard to both of his victims." (*Carroll I*, *supra*, B157628.) Moreover, Carroll either was the shooter or harbored an intent to kill in aiding and abetting Cunningham as the shooter, as shown by his statement to Cunningham just before the shooting, "'Let me kill them both.'" (*Ibid*.)

Therefore, Carroll was not eligible for relief under Senate Bill 1437 because under new section 189, subdivision (e), he could still be convicted of murder based on his intent to kill. (*Verdugo, supra*, 44 Cal.App.5th at p. 335 [petitioner was not eligible for relief under § 1170.95 because he harbored the specific intent to kill the victim, as found in the earlier opinion affirming his conviction]; *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 414, 419 [petitioner not eligible for relief under Sen. Bill 1437 because jury found true felony-murder special-circumstance instruction, which required jury to find aider and abettor intended to kill or was a major participant and acted with reckless indifference to human life].)

Because Carroll failed to make the initial prima facie showing for relief under section 1170.95, subdivision (c), he was not entitled to appointed counsel or a hearing. (*Tarkington, supra*, 49 Cal.App.5th at pp. 901-902 [because the court summarily denied the petition at the first prima facie review stage, "the appointment of counsel was not statutorily required by section 1170.95"]; *Verdugo, supra*, 44 Cal.App.5th at pp. 332-333 ["If, as here, the court concludes the petitioner has failed to make the initial prima facie showing required by subdivision (c), counsel need not be appointed."]; *People v. Lewis, supra*, 43 Cal.App.5th at p. 1140 ["Given the overall structure of the statute, we construe the requirement to appoint counsel as arising in accordance with the sequence of actions described in section 1170.95 subdivision (c); that is, after the court determines that the petitioner has made a prima facie showing that petitioner 'falls within the provisions' of the statute, and before the submission of written briefs and the court's determination

13

whether petitioner has made 'a prima facie showing that he or she is entitled to relief.'"].)

## DISPOSITIION

The order denying Carroll's petition for resentencing under section 1170.95 is affirmed.


FEUER, J.

We concur:


PERLUSS, P. J.


DILLON, J.*

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.