Filed 8/26/24  Loudon v. DHSE CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CLAYTON LOUDON, | |
| Plaintiff and Respondent, | E081497 |
| v. | (Super.Ct.No. PSC1703855) |
| DHSE, INC. et al., | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Defendants and Appellants. | [NO CHANGE IN JUDGMENT] |

We deny appellant's petition for rehearing and modify the opinion filed in this matter on August 8, 2024, as follows:

1. Replace the entire first full paragraph on page 16, which begins with "As to the joint employment theory," with the following paragraph:

As to the joint employment theory, defendants contend that "[t]he only 'alleged violator'" to have "ever employed Clayton Loudon was DHSE, Inc." That is not what the operative pleading alleges.  In the complaint, Loudon

1

alleged that he "worked for Defendants as a non-exempt employee," and the complaint's definition of "defendants" includes all defendants that executed the settlement agreement. Loudon did not allege that he worked specifically for DHSE. Moreover, defendants do not cite any evidence in the record to support the proposition that only DHSE employed Loudon. Rather, defendants cite their memorandum of points and authorities filed in opposition to Loudon's motion to approve the settlement. Factual assertions in a memorandum of points and authorities are not evidence. (*Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 578.) Although we are not obliged to search the record unguided (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684), we note that the factual assertion in the memorandum of points and authorities is not supported by any evidence. None of the attorneys attested that Loudon worked exclusively for DHSE. The argument concerning the joint employment theory is not supported by the record and therefore fails.

2. At line 2 on page 19, insert "fails" after "The argument" and delete the remainder of the paragraph so the second sentence of the paragraph reads: "The argument fails." Also delete "Moreover," at the beginning of the next paragraph and remove the paragraph break between the two paragraphs.

Except for these modifications, which do not affect the judgment, the opinion remains unchanged.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

CLAYTON LOUDON,

    Plaintiff and Respondent,

v.

DHSE, INC. et al.,

    Defendants and Appellants.

E081497

(Super.Ct.No. PSC1703855)

OPINION

APPEAL from the Superior Court of Riverside County.  Harold W. Hopp, Sharon J. Waters, Sunshine S. Sykes, Judges.  Affirmed.

The Law Offices of Timothy D. Murphy and Timothy D. Murphy, for Defendants and Appellants.

GrahamHollis, Graham S.P. Hollis, Nathan Reese; Irvine Bidgoli and Rod Bidgoli for Plaintiff and Respondent.

This appeal arises from the settlement of a representative action under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.; unlabeled statutory references are to this code). In August 2019, DHSE, Inc. (DHSE), PSTPS, Inc., DHSL, LLC, DHSO, Inc., AACAL, Inc., ERS, LLC, and Michael Bickford (collectively, defendants) settled a PAGA action with plaintiff Clayton Loudon. Months after defendants executed the agreement settling the PAGA claims, defendants objected to court approval of the agreement, arguing that the agreement was "unjust, arbitrary, oppressive, and confiscatory" for various reasons. Defendants also argued that the amount of attorney fees allocated in the agreement to Loudon's attorneys was excessive. The trial court overruled defendants' objections and approved the settlement, including its allocation of attorney fees. On appeal, defendants challenge the trial court's approval of the agreement. We reject defendants' arguments and affirm the judgment.

BACKGROUND

I.    *The Complaint and Mediation*

In July 2017, Loudon filed a complaint against defendants, alleging that he worked as a nonexempt employee for "[d]efendants," whom he referred to as his "former employers and/or joint employers." The complaint did not contain any allegations concerning the timeframe of Loudon's employment or his specific job. The complaint contained nine causes of action against defendants in which Loudon asserted individual claims for (1) various Labor Code violations, including that defendants failed to pay him

2

overtime compensation and did not adequately provide off-duty meal and rest periods, (2) unfair business practices, and (3) unlawful retaliation.

The complaint also included a representative claim for civil penalties under PAGA. With respect to the PAGA claim, Loudon alleged that defendants "violated and continue to violate provisions" of the Labor Code and applicable wage orders concerning payment of wages. Loudon mailed a copy of the PAGA complaint to the Labor and Workforce Development Agency (LWDA) in April 2017, and the LWDA did not assume jurisdiction over the matter.

The parties agreed to participate in private mediation.[1] In anticipation of that mediation, defendants provided Loudon with various records, including employment policies, Loudon's complete employee file, and the "time and payroll for 480 of Defendants' employees . . . (since June 9, 2015)." The parties' attorneys "analyzed, researched, and investigated the potential issues, including matters related to the calculation of damages, trial, and appellate issues and risks."

The parties attended mediation in March 2019 with a mediator knowledgeable about California wage and hour law. Following over 13 hours of mediation, the parties settled all of the individual and PAGA claims. In May 2019, defendants retained new

---

[1] We take the facts concerning the mediation from the declaration of Loudon's attorney filed in support of the motion to approve the settlement. Defendants' attorney asserted in opposition that "multiple aspects" of Loudon's attorney's declaration were "misstated," but defendants' attorney did not dispute any of the basic facts about the mediation process.

counsel.  The parties continued negotiations for several additional months and in August 2019 executed both an "Individual Settlement Agreement and Mutual Release of Claims" and a "Private Attorneys General Act Settlement Agreement and Limited Release of Claims" (the PAGA settlement agreement or the agreement).  Loudon's attorneys submitted the PAGA settlement agreement to the LWDA in October 2019.

II.     *The PAGA Settlement Agreement*

The PAGA settlement agreement contains recitals of the facts on which the settlement was based, including that Loudon was "a former employee of Defendants" "from approximately December 2014 to September 23, 2016."  The parties acknowledged and agreed that the agreement constituted a compromise of Loudon's PAGA claims and that the parties desired and intended the settlement "to effect a final and complete resolution of the Action and all representative claims pursuant to the PAGA that [Loudon] and/or the Aggrieved Employees may have against Defendants for PAGA penalties."  The agreement defined "Aggrieved Employees" to "mean any employee of Defendants who has worked for Defendants from April 20, 2016 to the Effective Date," which in turn was defined as the "date the Court approves this PAGA Settlement Agreement."

The parties entered the PAGA settlement agreement "in order to avoid [the] additional cost and the uncertainty of litigation."  They "desire[d] to resolve all PAGA claims and claims for recovery of penalties against the Defendants, both known and unknown, as of the date of the execution of this PAGA Settlement Agreement."  The

4

parties agreed that the settlement agreement "provides for a reasonable resolution of the PAGA Claims that accomplishes the deterrent purposes of the PAGA, and have arrived at the settlement in extensive, arms-length negotiations, taking into account all relevant factors, present and potential."

Defendants agreed to settle Loudon's individual claims for $150,000 and the PAGA claims for $650,000, with 75 percent to be paid to the LWDA and 25 percent distributed to the aggrieved employees. Under both agreements, defendants agreed to make six installment payments of $133,333.33, to begin after the court approved the settlement. With respect to attorney fees, the parties agreed that Loudon's attorneys "shall be entitled to receive attorney's fees in an amount equal to one-third of the PAGA Settlement Sum," subject to the court's approval of the settlement.

Loudon individually and on behalf of the LWDA agreed to release "any and all claims seeking civil penalties under the California Labor Code predicated on the PAGA Claims asserted in the Action, during the PAGA Timeframe against Defendants . . . ." The PAGA timeframe was "defined as the period of April 20, 2016 to the Effective Date."

III.    *Loudon's Motion to Approve the PAGA Settlement Agreement*

The PAGA settlement agreement required defendants to prepare a joint motion for court approval of the settlement, but defendants never prepared that motion. In January 2020, defendants opposed a motion to approve the settlement, even though no such

5

motion was pending. Defense counsel explained that he had prepared the opposition in anticipation of Loudon filing a motion to approve the settlement.

In June 2020, Loudon moved the court to approve the PAGA settlement agreement, arguing that it was "fundamentally fair and reasonable." The motion was supported by declarations from two of Loudon's attorneys—Rod Bidgoli and Vilmarie Cordero—with the settlement agreements attached as exhibits.

According to Bidgoli, the agreement "was reached through informed, arms-length bargaining," and "the parties agree[d] that the instant settlement is fair and reasonable based upon the disputed strength of the PAGA claims, the range of outcomes in the litigation, the risk, expense and complexity of further litigation, the scope of the release, and the experience and views of counsel and the mediator."

In explaining why the PAGA settlement agreement should be approved, Bidgoli described the period covered by the agreement, the number of aggrieved employees, and the aggregate number of violations as follows: "The parties['] PAGA Settlement Agreement covers the Period from June 20, 2016 through the date the Court approves the parties' settlement. As of the parties' mediation in March 2019, Defendants indicated that they had a total of 480 employees, representing a total of 11,629 pay periods." Bidgoli attested that defendants had 860 current and former employees "[a]ccording to the information most recently provided by Defendants."

Bidgoli described the total civil penalty exposure that defendants faced for each of the alleged PAGA claims, given the information available when the parties mediated. Loudon's counsel had calculated the rate of meal and rest break violations to be 39 percent and 75 percent, respectively, on the basis of "a review of Defendants' record[s]" and "based on interviews with [Loudon] and other aggrieved employees" for the rest period violations. By reviewing defendants' records, Loudon's counsel had determined that about 31 percent of defendants' employees worked over eight hours per day, and Loudon's counsel assumed that 100 percent of the employees who worked over eight hours were not paid overtime. With respect to the wage statement violations and the inadequate compensation of terminated employees, Loudon's counsel assumed the same 31 percent rate of violation, because the claims were derivative of the overtime claim. Based on those "assumptions and analysis of the records provided by Defendants, [Loudon's] Counsel estimate[d] that Defendants' total potential exposure for civil penalties under PAGA is $1,587,569." Bidgoli stated that the settlement of $650,000 for the PAGA claims represented 41 percent of defendants' penalty exposure estimated from "review and analysis of the records provide[d] by Defendants."

Bidgoli stated that he believed that "the possibility of recovering such a large amount [was] remote, particularly in light of the relative strength of Defendants' defenses" and certain specified difficulties that the parties agreed that Loudon might face in proving the PAGA claims. Bidgoli believed that Loudon had a 50 percent chance of succeeding on the PAGA claims, so he reduced the value of the total potential civil

7

penalties to $793,784. In addition, Bidgoli believed that "it was very likely that, given the attenuated nature of some of the claims, the Court would, in its discretion, limit the award because it was unjust, arbitrary and oppressive, or confiscatory. As such, [Loudon] estimate[d] that it [was] possible that [the trial court could] further reduce the civil penalties under PAGA by as much [as] 50% or more, which further reduces the value of [Loudon's] representative claims for civil penalties to $396,892." Bidgoli proposed that the net settlement of $433,333.34, which included approximately $22,000 for litigation costs and administering the settlement, "represent[ed] a fair and reasonable settlement of these highly disputed claims." Of that amount, Bidgoli explained that 860 employees would share the 25 percent allocated to aggrieved employees, resulting in approximately $120 per aggrieved employee.

With respect to attorney fees, Bidgoli explained that "the Parties allocated one-third of the Settlement Amount to [Loudon's] counsel for reasonable attorneys' fees, plus actual litigation costs" because of "the efforts and substantial risk undertook in obtaining a common fund settlement that benefits the LWDA and Aggrieved Employees." Bidgoli explained that if the matter proceeded to trial Loudon would be entitled to recover attorney fees and costs, which Bidgoli estimated could range between $200,000 and $300,000 for the individual claims alone. Through the date of the declaration, Bidgoli's firm had spent over 200 hours litigating the case, and he attested that his "firm's lodestar currently exceeds $139,000," based on an hourly rate of $695 per hour. Bidgoli's firm associated into the case in March 2020.

Cordero is a partner at another law firm representing Loudon. She attested that she believed that the PAGA settlement agreement was "fair and reasonable considering the highly disputed nature of the claims and the risks and expense involved in continued litigation." She determined that the settlement was fair "based on a number of factors, including an investigation of the applicable law as it applied to the facts discovered, the maximum potential civil penalties recoverable for [Loudon's] representative claims, as well as Defendants' potential defenses thereto." Cordero described the work that her firm had done and the hourly rate of the attorneys involved. She attested that the "firm's lodestar is currently $87,093."

Defendants opposed the motion. In their memorandum of points and authorities, defendants claimed that Loudon "worked as a 'Network Assistant' in the IT department at Desert Hot Springs (DHSE, Inc.) from December 6, 2014 until September 23, 2016." Defendants argued that the settlement should not be approved, because (1) the PAGA settlement agreement violated the Supreme Court's holding in *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175 (*ZB*) (issued after the parties' settled) by allowing aggrieved employees to recover unpaid wages, (2) Loudon lacked standing to bring a PAGA suit against any defendant other than DHSE because the complaint does not properly plead a joint-employer theory, (3) Loudon has standing to represent aggrieved employees only during his period of employment, (4) Loudon can recover civil penalties from aggrieved employees only from July 2016 through September 23, 2016—the end of Loudon's termination—because the complaint was filed in July 2017 and the limitations period for

9

PAGA claims is one year, and (5) the settlement is unjust, arbitrary, oppressive, and confiscatory. Defendants also challenged the amount of attorney fees on several grounds.

Defendants' attorney, Timothy Murphy, filed a declaration in support of the opposition. Murphy asserted that the declarations from Bidgoli and Cordero "are misstated in multiple aspects." With respect to Bidgoli's declaration, Murphy asserted that Bidgoli's statement that "'up to one-third'" of the settlement should be allocated to attorney fees is "contrary to California law." With respect to Bidgoli's statement that "'the settlement was reached through informed and arms-length bargaining,'" Murphy countered that the law had materially changed since the settlement and Bidgoli's calculation of the number of aggrieved employees was erroneous. Specifically, Murphy attested that Bidgoli's claim that defendants' had 860 total current and former employees was not true. Murphy attested: "To the contrary, the cohort of possible 'aggrieved employees,' depending upon the length of the 'violations period,' is less than 77 and possibly fewer than 49." In addition, Murphy pointed out that Bidgoli "provide[d] absolutely no accounting for his estimate" of defendants' total exposure for PAGA penalties.

IV.  *Approval of the PAGA Settlement Agreement and Further Proceedings*

Following a hearing in July 2020, the trial court granted Loudon's motion to approve the PAGA settlement agreement, finding the settlement to be fair, reasonable, and adequate with respect to the underlying purposes of the PAGA statute. The court found none of defendants' arguments meritorious. As to defendants' claim that the

10

PAGA settlement agreement included unpaid wages in violation of *ZB*, *supra*, 8 Cal.5th 175, the court found that nothing in the agreement indicated that its relief for the PAGA claims was not limited to civil penalties, and Bidgoli's declaration confirmed that the settlement was based on a calculation of possible civil penalties.

At the hearing, defendants argued that there were mutual mistakes of fact and law that warranted rescission of the agreement. The court rejected the argument, noting that defendants had not filed a "motion or action to rescind the settlement." The court reasoned that defendants "were fully represented at the mediation, fully represented when they signed the agreement. They are bound by the agreements they sign. I am not going to look at how many aggrieved members there are or are not based on an allegation that there have been releases. That was something that, if it was in existence at the time of the mediation, should have been factored . . . into the parties' settlement discussions at mediation. It's not a basis to undo this settlement or to conclude that because it includes more aggrieved members that somehow that it makes it oppressive or confiscatory . . . or somehow unfair or unreasonable."

In July 2020, the court issued an order granting Loudon's motion to approve the PAGA settlement and entered judgment resolving both the PAGA claims and the individual claims. The court reserved jurisdiction over certain issues. (*Loudon v. DHSE, Inc.* (Nov. 17, 2022, B322559) [nonpub. opn.].) At the hearing, both counsel had agreed to entry of judgment rather than dismissal should the court approve the settlement.

11

After judgment was entered, defendants moved to vacate the judgment, arguing that their attorney had agreed to entry of judgment without their permission. The court granted the motion on the basis of the attorney's excusable neglect. The court ordered: "Because the PAGA settlement calls for a series of payments to be made by defendants— dismissal at this time is not appropriate. Rather—dismissal should be entered only after defendants have fully complied with the settlement." The court ordered that if defendants failed to make timely payments, then Loudon could seek entry of judgment under Code of Civil Procedure section 664.6.[2]

Defendants made the first two installment payments in July and October 2020. In March 2023, Loudon moved for entry of judgment because defendants had failed to make the remaining installment payments. The court granted the motion and entered judgment against defendants in May 2023. The judgment indicated that defendants had paid only two of the six installment payments required under the agreement and that defendants were "still obligated to pay $533,333.34" to a third-party administrator. The court awarded attorney fees as allocated in the agreement as follows: "$216,666.67 or 1/3 of the $650,000.00 in attorneys' fees to be paid from the PAGA Settlement Amount to Plaintiff's counsel of record."

---

[2] Defendants appealed from the trial court's order and also filed a petition for writ of mandate concurrently with their opening brief in the appeal. (*Loudon v. DHSE, Inc.*, *supra*, B32259.) The Second District dismissed the appeal and denied the writ petition as untimely. (*Ibid.*)

12

DISCUSSION

Defendants contend that the trial court abused its discretion by approving the PAGA settlement agreement, and they challenge the attorney fee award. Defendants also contend that the court erred by not rescinding the agreement. We are not persuaded.

I.     *PAGA*

"The Legislature enacted the PAGA in 2003 after deciding that lagging labor law enforcement resources made additional private enforcement necessary '"to achieve maximum compliance with state labor laws."'" (*ZB*, *supra*, 8 Cal.5th at p. 184.) PAGA empowers employees to sue employers individually and on behalf of other aggrieved employees to recover civil penalties for most Labor Code violations. (*ZB*, at p. 185.) "All PAGA claims are 'representative' actions in the sense that they are brought on the state's behalf. The employee acts as '"the proxy or agent of the state's labor law enforcement agencies"' and '"represents the same legal right and interest as"' those agencies—'"namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency."' [Citation.] The employee may therefore seek any civil penalties the state can, including penalties for violations involving employees other than the PAGA litigant herself." (*Ibid.*) Aggrieved employees cannot recover unpaid wages under PAGA. (*ZB*, at p. 198.)

"Once an aggrieved employee files a PAGA lawsuit, the statutory scheme recognizes that the employee may settle that lawsuit on behalf of the state. (§ 2699, subds. (a) & (*l*)(2).)" (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 78 (*Moniz*),

13

disapproved on another ground in *Turrieta v. Lyft, Inc.* (Aug. 1, 2024, S271721) __ Cal.5th __ [2024 Cal. Lexis 4156].) "If an aggrieved employee settles such an action, the trial court must review and approve the settlement, and the civil penalties are distributed 75 percent to the LWDA and 25 percent to the aggrieved employees." (*Id.* at p. 64; § 2699, subds. (i), (*l*)(2).) When an aggrieved employee settles a PAGA action, the statute provides: "The superior court shall review and approve any settlement of any civil action filed pursuant to this part." (§ 2699, subd. (*l*)(2) (§ 2699(*l*)(2); *Moniz*, at p. 78.)

In reviewing a PAGA settlement, the trial court "should evaluate [it] to determine whether it is fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws." (*Moniz*, *supra*, 72 Cal.App.5th at 77.) The court is vested with broad discretion in making that determination. (*Id.* at p. 76.) In ascertaining the fairness of a PAGA settlement, the trial court may consider many of the same factors used to evaluate the fairness of class action settlements, "including the strength of the plaintiffs' case, the risk, the stage of the proceeding, the complexity and likely duration of further litigation, and the settlement amount." (*Moniz*, at p. 77.)

We review for abuse of discretion the trial court's approval of a PAGA settlement. (*Moniz*, *supra*, 72 Cal.App.5th at p. 78.) "We review the trial court's findings of fact for substantial evidence and its conclusions of law de novo." (*Ibid.*) We examine the evidence in the light most favorable to the prevailing party and do not reweigh the

14

evidence or reconsider credibility determinations. (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34.)

II.    *The Settlement Agreement's Relationship to the Complaint*

Defendants challenge the trial court's approval of the PAGA settlement agreement on several grounds relating to the relationship between the agreement and the claims alleged in the operative pleading. The arguments lack merit.[3]

Defendants argue that the trial court abused its discretion by approving the PAGA settlement agreement because Loudon's complaint did not properly plead "a 'joint employment' theory." Defendants contend that in light of that purported failure Loudon could not use that theory "as a basis to reasonably 'estimate' the total number of defendant DHSE, Inc.'s employee cohort" as part of the settlement compromise. Defendants likewise argue that because Loudon did "not properly plead post-filing violations" in the complaint, it was improper for the agreement to include civil penalties for violations three years beyond the complaint's filing date. Defendants similarly argue that the trial court abused its discretion by approving the PAGA settlement agreement because Loudon lacked standing to pursue PAGA claims for any violations that occurred after his period of employment. Relatedly, defendants argue that Loudon could recover PAGA penalties only from July 2016 through the end of his employment in September

---

[3]    Defendants also argue that Loudon's motion to approve the PAGA settlement agreement did not comply with the court's case management order. The argument is forfeited because defendants did not make it in the trial court. "'[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.'" (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 (*Newton*).)

15

2016, because the complaint was filed in July 2017 and the applicable statute of limitations for a PAGA claim is one year.

As to the joint employment theory, defendants contend that "[t]he only 'alleged violator'" to have "ever employed Clayton Loudon was DHSE, Inc." That is not what the operative pleading alleges. In the complaint, Loudon alleged that he "worked for Defendants as a non-exempt employee," and the complaint's definition of "defendants" includes all defendants that executed the settlement agreement. Loudon did not allege that he worked specifically for DHSE. Moreover, defendants do not cite any evidence in the record to support the proposition that DHSE employed Loudon. Rather, defendants cite their memorandum of points of authorities filed in opposition to Loudon's motion to approve the settlement. Factual assertions in a memorandum of points and authority are not evidence. (*Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 578.) Although we are not obliged to search the record unguided (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684), we note that the factual assertion in the memorandum of points and authorities is not supported by any evidence. None of the attorneys attested that Loudon worked for DHSE specifically. The argument concerning the joint employment theory is not supported by the record and therefore fails.

Defendants' challenge to the court's approval of the PAGA settlement agreement based on the allegations in the complaint or the limitations period applicable to the claims pled is similarly unsupported. Defendants have not articulated any reason why the parties' settlement agreement had to be limited by the allegations in the complaint.

16

Rather, throughout the opening brief, defendants assume that the allegations in the complaint somehow affected or acted as a constraint on the parties' settlement agreement. Because defendants have not supported that assumption with any legal analysis or authority, the arguments based on that underlying assumption are forfeited. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*).)

In any event, defendants' attempt to use the complaint to limit the permissible scope of the parties' settlement is legally erroneous. Because a settlement agreement is a contract, the legal principles generally applicable to contracts apply to settlement agreements. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811.) Contracting "parties may contract as they please so long as they do not violate the law or public policy." (*Linnastruth v. Mutual Ben. Health & Acci. Asso.* (1943) 22 Cal.2d 216, 218 (*Linnastruth*).) Like every contract, a settlement agreement must have "[a] lawful object" (Civ. Code, §§ 1550, 1596) and cannot contravene public policy (*Tri-Q, Inc. v. Sta-Hi Corp.* (1965) 63 Cal.2d 199, 218) or "a law established for a public reason" (Civ. Code, § 3513). (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 658.)

Defendants fail to identify any principle of contract law that requires the parties settling an action to limit the scope of the settlement to what the plaintiff alleged in the operative pleading. Nor are we aware of any such legal principle. The parties were free to settle whatever they wanted so long as the agreement did not violate the law or public policy, regardless of the allegations in the complaint. (*Linnastruth*, *supra*, 22 Cal.2d at p. 218; *Series AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217

17

Cal.App.4th 156, 164 ["A bedrock principle of contract law in California has always been that competent parties should have ""'the utmost liberty of contract'"" to arrange their affairs according to their own judgment so long as they do not contravene positive law or public policy"].) In the present case, providing relief to more employees than could have been covered by the allegations in the complaint does not contravene public policy or a law established for a public reason. Instead, providing relief to more employees furthers the purpose of PAGA to protect the public interest by compensating more employees who have been adversely affected by Labor Code violations (*Moniz*, *supra*, 72 Cal.App.5th at p. 77) and by assessing greater civil penalties against defendants to act as a ""'meaningful deterrent to unlawful conduct'"" (*id.* at p. 69).

For these reasons, we reject defendants' arguments that the trial court abused its discretion by approving the PAGA settlement agreement because the scope of settlement should have been limited to the allegations of the complaint.

III.     *Sufficiency of the Evidence*

Defendants also challenge the trial court's approval of the PAGA settlement agreement on several grounds relating to the sufficiency of the evidence supporting the trial court's finding that the agreement was fair, reasonable, and adequate with respect to the underlying purposes of PAGA. The arguments lack merit.

Defendants argue that the trial court's review of the PAGA settlement agreement was inadequate under section 2699(*l*)(2) because the court did not receive, consider, or demand evidence supporting "core legal issue[s]," such as the selected violations period

18

and "the number of non-employees upon an unpleaded 'joint employment' theory to include as allegedly represented 'aggrieved employees.'"  The argument is forfeited because defendants do not provide any legal analysis or cite any legal authority supporting the proposition that Loudon had to submit evidence showing why the parties agreed to the chosen settlement period or agreed to settle PAGA claims for employees of all named defendants during that period.  (*Hernandez*, *supra*, 37 Cal.App.5th at p. 277.)

Moreover, Loudon's motion was supported by declarations from two of his attorneys.  As Bidgoli explained, defendants provided Loudon's attorneys with the employee records for 480 employees before the mediation in March 2019.  Those records covered the period starting in June 2015.  Bidgoli signed his declaration in June 2020, and he attested that defendants had recently informed Loudon's counsel that defendants' current and former employees totaled 860.  That constitutes sufficient evidence showing that the number of aggrieved employees covered by the agreement is fair and reasonable.

Defendants counter that Bidgoli's "declaration failed to proffer substantive, reliable evidence to support the reasonableness of the settlement."  In support of that argument, defendants point out that their attorney (Murphy) provided different calculations based on the number of DHSE's employees and a violations period that covered Loudon's period of employment.  The argument shows at most that there was conflicting evidence concerning certain variables underlying the agreement.  The mere existence of conflicting evidence does not render Bidgoli's declaration unreliable or show that the trial court's finding of reasonableness is not supported by substantial evidence.

19

(*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631 [the appellate court does not weigh evidentiary disputes but rather determines "whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment"].)

In addition, the information provided by Murphy does not actually contradict the information provided by Bidgoli. Rather, Murphy's calculations represented a subset of the totals provided by Bidgoli. Murphy calculated the number of employees employed by one defendant employer, not by all defendants, during a significantly shorter period of time than covered by the settlement period. That evidence has no tendency to show that the settlement was unreasonable. It merely provides evidence of how many fewer aggrieved employees would have been covered if the parties entered a different agreement altogether.

Defendants also contend that the evidence is insufficient to support the agreement because the record does not contain any evidence supporting Bidgoli's statements about the assumed percentage of employees that suffered various Labor Code violations such as meal and rest break violations, failure to pay overtime and double time, and wage statement violations. Defendants also argue that the assumed percentage of violations amounts to "pure speculation" that "cannot support a legitimate settlement." (Italics omitted.) The arguments are forfeited because defendants did not make them in the trial court. (*Newton*, *supra*, 110 Cal.App.4th at p. 11.) The arguments also fail on the merits. Bidgoli's declaration states that the assumed percentage of the specific violations was

based on "a review of Defendants' record." The assumed violation percentages were therefore derived from data provided by defendants and not based on conjecture or speculation.

IV. *Unpaid Wages*

Defendants argue that the calculation of "asserted penalties" in the PAGA settlement agreement "failed to affirmatively exclude recovery for unpaid wages in violation of the holding in" *ZB*, *supra*, 8 Cal.5th 175. We disagree.

The Supreme Court issued *ZB* one month after the parties executed the PAGA settlement agreement. (*ZB*, *supra*, 8 Cal.5th at p. 175.) *ZB* held that unpaid wages are not recoverable under PAGA. (*ZB*, at pp. 182, 188.)

Defendants contend that the PAGA settlement agreement violates *ZB* because "a number of the allegations in the Loudon complaint represent claims for unpaid wages that are not 'civil penalties' recoverable through a PAGA action on the state's behalf." We assume for the sake of argument that *ZB*, *supra*, 8 Cal.5th 175 could affect the trial court's approval of the agreement if the agreement included unpaid wages.

In determining whether the PAGA settlement agreement provides recovery for the aggrieved employees' unpaid wages, we analyze the language of the agreement itself and not the allegations in the complaint. (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 531.) As we have already explained, defendants' focus on the allegations in the complaint is misplaced. The agreement provides that the parties settled in order "to resolve all PAGA claims and claims for recovery of penalties," and that they

21

intended "to effect a final and complete resolution of the Action and all representative claims pursuant to the PAGA that [Loudon] and/or the Aggrieved Employees may have against Defendants for PAGA penalties." In addition, Loudon individually and on behalf of the LWDA released "any and all claims seeking civil penalties under the California Labor Code predicated on the PAGA Claims asserted in the Action." By contrast, unpaid wages are never mentioned in the agreement. The language of the PAGA settlement agreement thus makes clear that the PAGA settlement is for civil penalties only.

Defendants' only argument to the contrary is unavailing. They contend that the agreement fails to specify "how much of the $650,000 to be paid comprises unpaid wages and how much constitutes recovery of alleged PAGA penalties." The agreement did not need to specify any allocation between civil penalties and unpaid wages, because the agreement unambiguously provides that the settlement is entirely for civil penalties.

V.      *Attorney Fees*

Defendants make numerous arguments challenging the attorney fees award, including that the fee award was excessive, there is insufficient evidence to support the award, and the award did not specify any allocation between the work performed for Loudon and the work performed for the other aggrieved employees. The arguments lack merit.

The amount of the attorney fee award was set in the PAGA settlement agreement to be "an amount equal to one-third of the PAGA Settlement Sum," subject to the court's approval. Loudon's attorneys stated that through June 2020 their attorney fees for work

22

on the matter totaled over $226,000.  In accordance with the agreement, the court awarded attorney fees to Loudon's counsel equaling one-third of the PAGA settlement amount ($216,666.67 is one-third of $650,000).  In awarding that amount, the trial court reasoned that attorney fees were "an agreed upon amount," and "the evidence indicated that the fees [were] actually higher than one-third of the settlement agreement."

Defendants' arguments concerning the amount of the attorney fees award ignore the fact that the parties agreed to the amount.  They challenge the award of attorney fees as if there were no agreement between the parties as to the amount.  The parties' freedom to contract included the freedom to choose an attorney fee award that did not violate the law or public policy.  (*Linnastruth*, *supra*, 22 Cal.2d at p. 218.)  Defendants do not argue that the parties' agreement to one-third the PAGA settlement contravened the law or public policy, so their arguments fail.

Moreover, section 2699(*l*)(2) required the court to review and approve the PAGA settlement agreement, which in the present case included an agreement about the award of attorney fees.  In reviewing the agreement, the court determined whether the agreement was "fair—reasonable—and adequate with reference to the underlying purposes of the PAGA statute," as it was required to do.  (*Moniz*, *supra*, 72 Cal.App.5th at 77.)  We review that determination for abuse of discretion.  (*Id.* at p. 78.)  Defendants do not explain how the court abused its discretion in making that determination with respect to attorney fees in light of Loudon's attorneys' sworn statements that their fees were higher than the agreed-upon amount.  Given defendants' failure to present or

23

develop any argument showing that the court abused its discretion, we consider defendants' challenge to the attorney fee award forfeited. (*Hernandez*, *supra*, 37 Cal.App.5th at p. 277.)

In any event, the trial court's determination on this point was not an abuse of discretion. Loudon's attorneys stated in June 2020 that their fees totaled over $226,000. Thus, when Loudon moved for approval of the settlement agreement, his attorney fees were already greater than the agreed-upon amount. Moreover, Bidgoli explained that his attorney fees would be much greater, up to $300,000 for the individual claims alone, if the matter proceeded to trial. Given that (1) the agreed-upon amount of attorney fees was smaller than the amount incurred by the time that Loudon filed his motion and (2) the amount that would be incurred if the case went to trial would be even greater, we conclude that the trial court did not abuse its discretion by approving the PAGA settlement agreement with the attorney fees award of one-third of the settlement, or $216,666.67.

## VI. *Rescission*

Defendants argue that the trial court erred by not rescinding the agreement on the basis of purported mutual mistakes of fact and law. We are not persuaded.

"When contracting parties have entered into a contract under a material mistake of law or fact, the parties are entitled to be relieved by reason of their mutual mistake." (*Merced County Mut. Fire Ins. Co. v. State of California* (1991) 233 Cal.App.3d 765, 771; *Guthrie v. Times-Mirror Co.* (1975) 51 Cal.App.3d 879, 884; Civ. Code, §§ 1689,

24

subd. (b)(1), 1567, subd. (5), 1576-1578.)  The parties must share the same misconception in order for the mistake to be mutual.  (*Renshaw v. Happy Valley Water Co.* (1952) 114 Cal.App.2d 521, 524 (*Renshaw*); *Crocker-Anglo Nat'l Bank v. Kuchman* (1964) 224 Cal.App.2d 490, 496.)  The party claiming that there was a mutual mistake carries the burden of establishing "it by clear and convincing evidence."  (*Martinelli v. Gabriel* (1951) 103 Cal.App.2d 818, 823 (*Martinelli*).)

Defendants contend that the PAGA settlement agreement is based on "multiple mutual mistakes of fact and law" that warrant rescission.  In particular, defendants argue that (1) Loudon "wrongly persuaded defendants and the trial court, that the 'relevant employment period'. . . lasted for a period from between June 20, 2016 and 'the date the court approves the parties' settlement'" and (2) this "mistake of law was compounded by a mistake of fact created by [Loudon's] suggestion without proof, that there was a total of 11,629 pay periods for 480 aggrieved employees," while "defendants contended variously that there was a cohort of 96 employees and 384 pay periods [citation.]; or 'less than 77 and possibly fewer than 49.'"

The arguments are meritless.  Defendants did not introduce any evidence in the trial court demonstrating that the parties shared any mistaken perception of the law or the facts when they entered the contract.  The only evidence that defendants submitted in opposing the motion to approve the settlement agreement was a declaration from their attorney.  The declaration contained claims about how many employees worked for DHSE during a shorter period than the covered settlement period.  Those claims have no

25

tendency to show that the parties shared a mistaken belief about the number of aggrieved employees when they entered the agreement. (*Renshaw*, *supra*, 114 Cal.App.2d at p. 524.) Having submitted no evidence concerning a shared misconception of fact or law by the parties, defendants failed to carry their burden in the trial court of demonstrating by clear and convincing evidence that the contract should be rescinded on the basis of a mutual mistake of fact or law.[4] (*Martinelli*, *supra*, 103 Cal.App.2d at p. 823.)

### DISPOSITION

The judgment is affirmed. Loudon shall recover his costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

---

[4] Defendants also argue that the trial court erred by declining to address their rescission claim on the merits because it was not brought by separate motion. Assuming for the sake of argument that the trial court thereby erred, the error was harmless for the reasons already given, because defendants' rescission claim was substantively unsupported.